CHARLES W. GAZZAM, PLAINTIFF IN ERROR, *v.* LESSEE OF ELAM PHILLIPS AND MARY HIS WIFE, AND ASHBEY W. ETHERIDGE.

The decision of this court in the case of Brown *v.* Clements (3 How., 650) reviewed and controlled.

The quantity of land granted to a patentee in pursuance of a pre-emption right under the act of 29th May, 1830, must, in an action at law, be ascertained from the description in the patent, and cannot be controlled by any supposed original equity to the whole of a quarter section to which a claim might have been made before the register and receiver.

Some latitude of discretion is allowed to the surveyor general under the act of 24th April, 1820, and the instructions of the land office, in the subdivision of fractional sections containing more than one hundred and sixty acres; and he is not obliged, absolutely, and under all circumstances, to lay off a full quarter or half quarter section, though the fraction is capable of such a subdivision.

THIS case was brought up, by writ of error, from the Supreme Court of the State of Alabama.

The parties claimed under the same titles which were before this court in the case of Brown *v.* Clements, reported in 3 How., 650. A diagram is there given, explanatory of the mode in which the fractional section was divided between Stone and Etheridge.

The present suit was an ejectment brought in 1850, by Phillips and Etheridge, who claimed under Etheridge's title against Gazzam, who claimed under that of Stone.

The suit was brought in the Circuit Court of the county of Mobile, (State court,) where the verdict and judgment were for the plaintiffs, in 1855. The charge of the judge to the jury was in conformity with the opinion of this court in the case of Brown *v.* Clements, accompanied with the remark that such would not have been his charge, if it had not been for the decision of this court in that case.

In March, 1856, the Supreme Court of Alabama affirmed this judgment, and Gazzam sued out a writ of error to bring the case to this court.

The case of Brown *v.* Clements was argued and decided in

*Gazzam* v. *Lessee of Elam Phillips et al.*

this court at the term which commenced in December term, 1844. In the 24th vol. of Alabama Rep., new series, p. 354, containing the decisions of the Supreme Court at January term, 1854, there is the following opinion delivered by Chief Justice Chilton:

"Doe *ex dem* Brown and wife *v.* Clements and Hunt, Chilton, C. J. This court having rendered a judgment of affirmance in this cause, it was taken by the plaintiff in error to the Supreme Court of the United States, where the judgment of this court was reversed, and the cause ordered to be remanded for further proceedings. The judgment of reversal was rendered in December, 1844, but the mandate or certificate of reversal did not reach this court until recently, when the cause was ordered to be placed upon the docket, &c., &c.

"It is the duty of the clerk of the Supreme Court of the United States to forward to this court the evidence of the reversal of the judgment, in order that the same may be disposed of in conformity to the decision of that court, &c., &c.

"That the failure of the clerks to do their duty, in not placing causes on the docket, shall work no prejudice to the parties, &c., &c."

Upon this matter, the Reporter has received from the clerk of this court a communication, which will be found in a note.*

---

* *Supreme Court United States, December Term,* 1844.

WILLIAM L. BROWN AND WIFE
  *v.*                            } *In error to the Supreme Court of Alabama*
CLEMENTS AND HUNT.

1845, January 21. Judgment reversed, with costs.

1845, May 9. The clerk sent fee bill due by plaintiffs in error to their counsel, (Mr. Sherman,) and requested him to remit amount per draft.

1845, June 10. The clerk received a letter from Mr. Sherman, remitting a draft for the amount due by plaintiffs in error, and requesting the clerk to send the mandate "immediately forward, as the Supreme Court of this State is now in session at Tuskaloosa," &c.

1845, June 10. The clerk sent the mandate per mail, addressed to "Charles E. Sherman, Esq., or Clerk of the Supreme Court of Alabama," Tuskaloosa, Alabama.

1858, April 20. Mr. Sherman has this date obtained a certificate from Hon. J. Marron, Third Assistant Postmaster General, stating that on the 12th June, 1845, there was mailed at Washington city a letter containing a mandate of the Supreme Court United States, addressed as above, that the same was returned as a *dead letter*, and was sent to the Washington city post office on the 23d April, 1853, and that on the 25th of said month it was delivered to Mr. Sherman.

The clerk of the Supreme Court of the United States does not understand that it has ever been considered his official duty to transmit the mandates of this court to the courts below. It certainly has never been the practice. But, on the contrary, it has always been the practice for the counsel to attend to the remission of their cases to the courts whence they came, just in the same manner and to the same extent that they attend to bring them up here.

The case was argued in this court by *Mr. J. Little Smith* for the plaintiff in error, and *Mr. Sherman* for the defendants.

Mr. Justice NELSON delivered the opinion of the court.

This is a writ of error to the Supreme Court of the State of Alabama.

The suit was brought in the court below to recover the possession of some four acres of land in the city of Mobile.

The lessors of the plaintiff claimed title to the lot in dispute as heirs of James Etheridge, and gave in evidence a patent from the United States to their ancestor, dated 30th May, 1833, "for the southwest quarter section twenty-two, in township four south, of range one west, in the district of land subject to sale at St. Stephens, Alabama, containing ninety-two acres and sixty-seven hundredths of an acre, according to the official plat of the survey of the said lands returned to the General Land Office by the surveyor general; which said tract has been purchased by the said James Etheridge." The above is a literal extract from the description of the parcel of land in the patent granted to Etheridge.

The defendant claimed under William D. Stone, and gave in evidence a patent to him from the United States, dated the 17th December, 1832, "for the south subdivision of fractional section twenty-two, same township and range, containing one hundred and ten acres and fifty-one hundredths of an acre, according to the official plat of survey of the said lands returned to the General Land Office by the surveyor general; which said tract has been purchased by the said William D. Stone." Etheridge gave notice to the register and receiver of his claim under the act of 29th May, 1830, on the 28th January, 1831, and produced his proofs. Stone gave notice of his claim to the same section, 25th March, 1831, and furnished his proofs. The claim and proofs in each case were received and filed, but no money was paid, nor certificates given, as the official plat of the survey of the township had not then been received at the office. This plat was returned and filed in March, 1832. There were private claims surveyed and laid down on the plat to this section, so that the portion open to the two pre-emption claims in question was confined to a fractional part of the section. This fractional part was divided according to the plat by a line running north and south through it, laying off in the west subdivision ninety-two and sixty-seven hundredths acres, and in the east one hundred and ten and fifty hundredths acres. Etheridge purchased the west and Stone the east subdivision.

The certificates of purchase were given to both claimants 30th April, 1832. The one to Etheridge is for the southwest

quarter of section twenty-two, containing ninety-two and sixty-seven hundredths acres, the quantity in the west subdivision, at the rate of one dollar twenty-five cents per acre, amounting to $115.43; the other to Stone is for the southeast subdivision of fractional section twenty-two, containing one hundred and ten and fifty-one hundredths acres, the quantity in the east subdivision, at the rate of one dollar twenty-five cents per acre, amounting to $138.13.

The sales in each case were made in conformity with the subdivisions, as marked upon the plat of the surveyor general then on file in the office, and to which all purchasers of the public land had access, and which constituted the guide of the register and receiver in making the sales.

The lessors of plaintiff also gave evidence showing that the premises in question were within the southwest quarter section twenty-two, computing the same according to the usual measurement of quarter sections, and that a full quarter might have been laid off from the fraction, and claimed that the whole of the southwest quarter had been appropriated to their ancestor, Etheridge, under the pre-emption act of 1830, which position was assented to by the court. The court also ruled that the purchase and patent of Stone, under whom the defendant claims, must be restrained to the fraction in the west part of the southeast quarter of section twenty-two, and that it gave him no right to the land in the southwest quarter.

The effect of this ruling, when applied to the case, gave to the heirs of Etheridge one hundred and sixty acres of the fractional section, in disregard of the official survey, the purchase, and patent for only the ninety-two acres, and reduced the one hundred and ten which Stone purchased, and had a patent for, to some forty-three acres.

The court is of opinion this ruling cannot be maintained. For, conceding for the sake of the argument that the plat by the surveyor general of this section was made contrary to law, the ground upon which the decision is sought to be maintained, and that Etheridge, under the pre-emption act of 1830, was entitled to purchase the whole of the southwest quarter, and to have it surveyed and patented to him, yet it was not so surveyed, nor did he purchase, nor has he obtained a patent for the same. On the contrary, he purchased and paid for the west subdivision only of this fractional section, containing ninety-two acres, and took out a patent for the subdivision. And in addition to this, Stone, at the same time, purchased the east subdivision, as laid down on the official plat, and has received a patent for the same, and which includes the premises in question.

The patent to Etheridge, as we have seen, describes the land granted as the southwest quarter, &c., containing ninety-two and sixty-seven hundreths acres, according to the official plat of the survey of said lands returned to the General Land Office. And the patent to Stone is equally specific in the description of the parcel granted to him. The title, therefore, to the premises in question, was never in the ancestor of the lessors of the plaintiff, but has been in Stone, and those holding under him, since the 17th December, 1832, the date of his patent.

The case of the claim of Etheridge to the whole of this southwest quarter, some years after the issuing of the patent to him and Stone, was presented to the Commissioner of the Land Office for correction. It was there elaborately examined by the counsel for the applicant, and by the Commissioner of the Land Office, and ultimately disposed of by the Secretary of the Treasury, on the opinion of the Attorney General; that officer maintaining the regularity of the survey, and of course confixing the grants to the subdivisions as laid down on the plat referred to in the patents. But, as we have already said, whether this view of the law be sound or not, it cannot control the question before us. The inquiry here is in respect to the legal title, whether it was in Etheridge or Stone, under the descriptions of the land in their respective patents. Unless we can hold that it passed to Etheridge under his patent, the plaintiff must fail. And we have seen that, without disregarding the plainest terms used in the description of the tract, it is impossible to arrive at any such conclusion. We deny, altogether, the right of the court in this action to go beyond these terms, thus explicit and specific, and, under a supposed equity in favor of Etheridge, arising out of the pre-emption laws, to the whole of the southwest quarter, enlarge the description in the grant, or, more accurately speaking, determine the tract and quantity of the land granted by this supposed equity instead of by the description in the patent.

But, independently of the above view, which we think conclusive against the plaintiff, we are not satisfied that there was any want of power in the surveyor general in making the subdivisions of this section according to the plat, and in conformity with which the sales of the land in dispute were made.

The first section of the act of 24th April, 1820, (3 U. S. St., p. 566,) after referring to the act of 1805, provides, "that fractional sections containing one hundred and sixty acres or upwards shall, in like manner, as nearly as practicable, be subdivided into half-quarter sections, under such rules and regulations as may be prescribed by the Secretary of the Treasury,

but fractional sections containing less than one hundred and sixty acres shall not be divided, but shall be sold entire."

The Secretary of the Treasury issued his regulations to the surveyor general, through the Commissioner of the Land Office, on the 10th June following, in which he directed that fractional sections containing more than one hundred and sixty acres should be divided into half-quarter sections by north and south or east and west lines, so as to preserve the most compact and convenient forms. The fractional section in question was divided by a north and south line, according to these instructions. Under them, some latitude of discretion has been exercised by the surveyor general in the division of fractional sections exceeding the quantity mentioned, regard being had to convenient forms, and to avoid the subdivision of the public domain into ill-shaped and unsaleable fractions. The question, as we have already seen, came again before the Secretary of the Treasury in the case of Etheridge, before us in 1837, and the construction first given, and also the practice of the surveyor general under it, confirmed. The surveys of the public lands under this regulation had then been in operation for some seventeen years, and has since been continued. Attorney General Butler, upon whose authority the Secretary of the Treasury confirmed the survey of the fractional section in question, in a well-considered opinion, observed, that "if Congress had intended that fractional sections should, at all events, be divided into half-quarter sections, when their shape admits the formation of any such subdivision, I think they would have said so in explicit terms, and that the discretionary power intrusted to the Secretary would have been plainly confined to the residuary parts of the section; and further, that the clause in the first section of the act of 1820, concerning fractional sections containing less than one hundred and sixty acres, (which are not to be divided at all, but sold entire,) is decisive to show that Congress, which passed the act, did not deem it indispensable that regular half-quarter sections should, in all practicable cases, be formed by the surveyors; on the contrary, it shows that they preferred a single tract, though containing more than eighty acres, and though capable of forming a regular half-quarter, to small inconvenient fractions." We entirely concur in this construction of the act.

The only difficulty we have had in this case arises from the circumstance that a different opinion was expressed by a majority of this court in the case of Brown's Lessee *v.* Clements, (3 Howard, p. 650.) That opinion differed from the construction of the act of 1820, given by the head of the land department, and disapproved of the practice that had grown up under

it in making the public surveys; and also from the opinion, subsequently confirming this construction and practice, by the Secretary of the Treasury and Attorney General, as late as the year 1837. The decision in Brown *v.* Clements was made in the December term, 1844.

It is possible that some rights may be disturbed by refusing to follow the opinion expressed in that case; but we are satisfied that far less inconvenience will result from this dissent, than by adhering to a principle which we think unsound, and which, in its practical operation, will unsettle the surveys and subdivisions of fractional sections of the public land, running through a period of some twenty-eight years. Any one familiar with the vast tracts of the public domain surveyed and sold, and tracts surveyed and yet unsold, within the period mentioned, can form some idea of the extent of the disturbance and confusion that must inevitably flow from an adherence to any such principle. We cannot, therefore, adopt that decision or apply its principles in rendering the judgment of the court in this case.

The judgment of the court below is reversed, and the proceedings remitted to the court, to award a venire, &c.