THE GRAND RAPIDS ICE & COAL COMPANY v. THE SOUTH GRAND RAPIDS ICE & COAL COMPANY.

*Riparian rights—Navigable lake.*

102 227
112 484

102 227
118 124
118 125
118 132

102 227
d127 44

102 227
s60ᴺᵂ 681
s47ᴬˢᴿ 516
j190ᵁˢ 489

1. Unless the contrary appear, a grant of land bounded by a watercourse conveys riparian rights, and the title of the riparian owner extends to the middle line of the lake or stream.

2. A boundary line may be so described as to preclude the extension of the grant by construction to the center of the stream. When it is said that meanders have no significance as boundaries, what is meant is that they do not preclude such extension of the grant.

3. The shore proprietor takes by virtue of shore ownership. His interest in the bed of the stream he acquires as appurtenant to the grant, and the extent of that interest depends upon his frontage, and the form, length, and breadth of the body of water upon which he abuts; and the fact that a lake may be of such form as to render the designation in it of the bound-

aries of the several riparian owners somewhat difficult is not an objection to the application of the rule.

4. The rule laid down in *Clute v. Fisher*, 65 Mich. 48, that the owner of a fractional subdivision of land, made so by an inland lake, owns the soil under the water of said lake which would be included within the subdivision if its lines were fully extended, is inconsistent with the rule, repeatedly laid down in this State, that the shore proprietor owns to the thread or center of the stream, and with the rule announced in *Clark v. Campau*, 19 Mich. 328, and *Gas-Light Co. v. Industrial Works*, 28 Id. 182, that side lines are to be governed by the course of the stream, and the submerged land bounded by lines drawn at right angles with the central thread, rather than at right angles with the shore at the point of departure; and, while a correct result was reached in the Clute case, the reasons given are without support.

Error to Kent. (Grove, J.) Submitted on briefs June 8, 1894. Decided September 27, 1894.

Case. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*Taggart, Wolcott & Ganson*, for appellant.

*J. W. Champlin*, for defendant.

McGRATH, C. J. This is a controversy over the right to cut ice in Reed's lake, plaintiff insisting upon ownership of the bed of the lake within the lines of the fractional subdivisions extended, and defendant insisting upon a division of the center line proportionate to the shore line, so as to give to each riparian owner an equitable share. The diagram on next page will best explain the situation.

By the meanders, the south shore line is 177.65 chains, and the north shore line is 117 chains. The center line of the lake is about 488 rods. The circuit judge finds that the plaintiff's lessors took all of the upland on the N. ½ of section 34, under a government conveyance which

described the land taken as "the north-east fraction of section 34, * * * containing one hundred and nine acres and ninety-hundredths of an acre, according to the official plat of the survey of said lands returned to the General Land-office by the Surveyor General." It is further found:

"That what is now known and called 'Reed's Lake' is a body of water lying in five different sections, and by the United States government survey was meandered, and the lands adjoining platted by the United States, and sold as fractions; * * * that the lake has an outlet which extends to Grand river, and is called 'Cold Brook;' that its greatest length of clear water, according to the United States plat, is 440 rods. On the east and west quarter line, if extended through the lake, it is 360 rods. If the quarter line north and south were extended through, the distance across the lake would be 192 rods. The distance across the water on the west section line of section 34 is 226 rods. The greatest width across the lake is 220 rods, and the least width is 96 rods. The waters of the lake cover over 370 acres of land. It is a pleasure resort, having four steamboats, drawing from two to four feet of water, and for carrying passengers during the summer months, and numerous smaller craft.

"The defendants are riparian owners of a piece of land situated on the south fraction of section 34, commencing at the section line between sections 33 and 34, extending eastwardly, and having a frontage on the margin of the lake of 313 feet, being a part of the south-west fractional quarter of section 34, town 7 north, of range 11 west, as described in the original purchase from the government in the same chain of title. They also had a verbal lease from the owners of the land, at the time of the cutting of the ice, lying next westerly from said section line, having a margin on the lake of 22 rods, and of the right to take ice in front thereof, so far as the same belonged to said riparian owners.

"The defendant, during the early part of the year 1893, entered upon the ice in front of the lands so leased and so owned by it, and cut and removed the ice in front of said lands, and between the shore and the middle of the lake, between lines which would be formed by running them at right angles from the center line of said lake to

the shore line, so that defendant would have the same proportionate share of the center line of the waters of the lake as they have of the whole shore line on the south side of said lake."

Plaintiff relies upon *Clute v. Fisher*, 65 Mich. 48. The following diagram will illustrate the situation in that case:

Clute owned the southern portion of the S. E. ¼ of 14, and the northern part of the N. E. ¼ of 23. The meander lines were almost wholly, and the water lines were wholly, within the subdivisions owned by Clute. The ice was cut at the point A. Defendant was not the owner of the N. W. ¼ of 24, nor of that portion of 23 adjoining Clute's land. No claim was made that an apportionment would give the right to cut the ice to some one other than Clute, but the sole contention was that the title to the bed of all the lands within the meandered lines was in the State. It was that question that the Court was dealing with. Mr. Justice MORSE in that case says:

"'It has been held in this State that the soil under the water of the inland lakes in this State does not belong to the general government or to the State. * * * It has also been repeatedly decided in this State that private ownership of lands bounded on navigable fresh water is not restricted to the meander line. * * * We have also held, in accordance with the decisions of the Supreme Court of the United States, that the land described as the fraction of any subdivision—as, for instance, the south-east fractional quarter—cannot be extended beyond the lines of the said south-east quarter as they would run if extended,"—citing *Wilson v. Hoffman,* 54 Mich. 246; *Keyser v. Sutherland,* 59 Id. 455; *Brown's Lessee v. Clements,* 3 How. 665; *Palmer v. Dodd,* 64 Mich. 474.

In *Wilson v. Hoffman, supra,* 117.48 acres of the S. ½ of section 28 lay south of Black river. Plaintiff brought ejectment to recover seven acres lying on the extreme west point, and within the lines of the S. W. ¼ if the lines had been extended. The description in the patent to plaintiff's grantor was:

" The south-east fractional quarter of fractional section 28, * * * containing 117 and 48-100 acres, according to the official plat of the survey of the said lands returned to the General Land-office by the Surveyor General."

The map was not introduced. The Court held that all subdivisional lines of a section must be straight lines running from the proper corner in one exterior line to its corresponding corner in the opposite boundary of the section, and that the patent and deed thereunder, through which plaintiff claimed, did not embrace within their description the lands in controversy, since no part thereof was within the S. E. ¼ of the section. The case came up again, and is reported in 70 Mich. 552, and the Court there say:

" In granting patents for lands, it is usual for the government to add, immediately after the statement of the number of acres which the tract contains, if it be frac-

tional, these words: 'According to the official plat of the survey of said lands returned to the General Land-office by the Surveyor General.' Such language, when used, constitutes a part of the description of the premises conveyed, and limits the purchaser to the tract as marked upon the plat of the Surveyor General. This was so held in *Gazzam v. Lessee of Phillips*, 20 How. 372, which overruled the same case in 3 How. 650, under the title of *Brown's Lessee v. Clements*. This was the language used in the patent to Tingley."

The record then showed that the premises described in the declaration were embraced in what the government denominated the S. E. fractional ¼ of 28.

"It might, perhaps, have been more accurate," say the Court, "to describe it as that portion of section 28 lying south of Black river; but as the fraction contained less than 160 acres, and the law required it to be sold entire, the description contained in the patent, in connection with the official plat, was sufficient, and is quite a customary method of description in the General Land-office."

In *Keyser v. Sutherland*, 59 Mich. 455, a dispute arose respecting a strip of land on the west line of section 29, in the S. W. ¼ of the N. W. ¼ of that section, which extended around the west and south sides of the S. W. ¼ of the section. Defendant claimed title under a conveyance from the government describing his land as the south fraction of section 29. Plaintiff's patent called for a full subdivision, to wit, the S. W. ¼ of the N. W. ¼ of 29. *Brown's Lessee v. Clements*, *supra*, and *Wilson v. Hoffman*, 54 Mich. 246, are cited.

In *Palmer v. Dodd*, 64 Mich. 474, defendant was the owner in fee of the E. ½ of the N. W. fractional ¼ of section 23, described in the United States patent as containing 57 acres. Plaintiff was the owner in fee of the S. W. fractional ¼ of section 23. The section was made fractional by a lake and marsh, which was meandered by the United States survey. The trespass was committed

within the boundaries of the S. W. ¼, if the quarter lines
should be extended. The lake, which was surrounded by
the marsh, was mostly located upon the S. E. ¼ of the
S. W. ¼ of the section. Defendant claimed to own to the
center of the lake. The Court say:

"But no grantee by such patent, granting a legal sub-
division of land, can derive title to land upon another
legal subdivision. This we have decided in the cases of
*Wilson v. Hoffman,* 54 Mich. 246, and *Keyser v. Suther-
land,* 59 Id. 455, which were based upon the decision of
the Supreme Court of the United States in *Brown's Lessee
v. Clements,* 3 How. 650. The principles which govern
the rights of riparian proprietors do not apply to defend-
ant's grant. No part of the land granted to him in the
description contained in his patent was bounded by a lake
or other water. His grant extended no further south than
the east and west quarter line of the section, and this line
did not touch or intersect the shore of any lake. Indeed,
the lake is nearly 40 rods south of this line."

In the Palmer case the Court recognized the principles
which govern the rights of riparian owners, but held that
they did not apply. The question before the Court in the
other cases was the significance of meander lines. In
none of them did the question arise as to the rights of
shore owners as between themselves.

It was held in *Clute v. Fisher, supra,* that the rule
that private ownership of lands bounded on navigable fresh
water is not restricted to the meander line must also apply
to the small inland lakes by analogy, whether they can
strictly be termed "navigable" or not; and it was also
conceded that in case of a body of water so large that the
lines of the sections or subdivisions of sections held by the
shore owners, if extended, do not embrace the whole of said
lake, then the rule of riparian ownership may be extended
to the center line of said lake. It would seem to follow
that the extent of the qualified ownership in the bed of
the river or lake must depend upon the shore ownership,

rather than upon the distance from the shore to the parallel subdivision line. The rule laid down in that case, that the owner of a fractional subdivision owns the soil which is included within the extended subdivision lines, is inconsistent with the rule, repeatedly laid down in this State, that the shore proprietor owns to the thread or center of the stream. It is also inconsistent with the rule laid down in *Clark v. Campau,* 19 Mich. 328, and *Bay City Gas-Light Co. v. Industrial Works,* 28 Id. 182, that side lines are to be governed by the course of the stream, and the submerged land bounded by lines drawn at right angles with the central thread, rather than at right angles with the shore at the point of departure. The application of the rule of the Clute case to the one before us would leave the W. $\frac{1}{2}$ of the N. W. $\frac{1}{4}$ of section 34 without the lines of any subdivision, and would apportion that area upon the basis of imaginary subdivision lines, without reference to shore proprietorship. Again, the rule that a conveyance of a fractional subdivision actually conveys the entire subdivision is inconsistent with the rule laid down in *Au Gres Boom Co. v. Whitney,* 26 Mich. 42; *Dart v. Barbour,* 32 Id. 271; *Jones v. Pashby,* 62 Id. 614; *Hartford Iron Mining Co. v. Cambria Mining Co.,* 80 Id. 491. In each of these cases part of a parcel of land having a water frontage was conveyed, describing it as half of the lot or parcel, and it was insisted that the conveyance was of half of the water frontage; but the Court held that the words "half of the lot" meant half in quantity of the upland. A correct result was reached in the Clute case, but the reasons given are without support. That case and those upon which it relies were based upon *Brown's Lessee v. Clements,* 3 How. 665, which was expressly overruled in *Gazzam v. Lessee of Phillips,* 20 How. 372. See, also, *Hardin v. Jordan,* 140 U. S. 371. In any event, we think

that this case is governed by the rule laid down in *Jones v. Lee*, 77 Mich. 35.

Unless the contrary appear, a grant of land bounded by a water-course conveys riparian rights (*Richardson v. Prentiss*, 48 Mich. 88); and the title of the riparian owner extends to the middle line of the lake or stream of the inland waters (*Webber v. Boom Co.*, 62 Mich. 626, and cases cited at page 636). A boundary line may be so described as to preclude the extension of the grant by construction to the center of the stream. When it is said that meanders have no significance as boundaries, what is meant is that meanders do not preclude such extension of the grant.

In *Luce v. Carley*, 24 Wend. 451, among the courses in the description of the premises were those to a hemlock stake "standing on the east bank of the river; from thence down the river, as it winds and turns, 24 chains and 94 links, to a hard maple tree." The court say:

"It is never thought that monuments mentioned in such a deed as occupying the bank of the river are meant by the parties to stand on the precise water line. * * * They are used rather to fix the *termini* of the line which is described as following the sinuosities of the stream. * * * Where the grant is so framed as to touch the water of the river, and the parties do not expressly except the river, * * * one-half the bed of the stream is included by construction of law." *Child v. Starr*, 4 Hill, 375; *Seneca Nation v. Knight*, 23 N. Y. 498; *Rix v. Johnson*, 5 N. H. 520; *Gouverneur v. Ice Co.*, 134 N. Y. 355.

The shore proprietor takes by virtue of shore ownership. His interest in the bed of the stream he acquires as appurtenant to the grant, and the extent of that interest depends upon his frontage, and the form, length, and breadth of the body of water upon which he abuts. That a lake may be of such form as to render the designation in it of the boundaries of the several riparian owners

somewhat difficult is not an objection to the application of the rule. Mr. Justice CAMPBELL says in *Lincoln v. Davis*, 53 Mich. 390:

"In carrying out lines of ownership in narrow streams, it is easy to find the general course of the stream, and to draw lines perpendicular to that course from the terminal shore lines. But on lakes all lines from the shore tend to converge in some central part of the lake; and, while irregularity of shape prevents drawing them to a common center, they must all, if protracted, cross each other in a perplexing way. The rule adopted in such waters, where the whole surface could be appropriated, has always been to divide the water area in proportion to the shore frontage, and never to attempt any division by lines run from the shore, except over such parts of the lake as are substantially adjacent to the shore. In some cases, by a fair partition, a shore owner would, by his extent of shore line, obtain a share beyond the center. But it seems impossible, if the whole water is to be regarded as divided up, to reach a division without some proceeding in the nature of a partition, which will fix the various possessions."

Again, in *Jones v. Lee, supra*, Mr. Justice CAMPBELL says:

"It appears clearly enough in the present case that while there is a considerable frontage facing north-west or south-east, the lake being longest in that direction, there must also be large end frontages, which look up or down the lake perpendicularly, or nearly so, to any line across from bank to bank, at most places along the shores. If this body of water were not navigable, and if all its waters could in any way be apportioned among the riparian proprietors for any lawful purpose, it is evident that it could not be done by reference to any *filum aquae* or middle thread, but must be done by some rule of proportion, which probably could only be got at by some partition proceeding, inasmuch as such waters are common for all ordinary uses."

In *Blodgett & Davis Lumber Co. v. Peters*, 87 Mich. 498, the question arose as to the proper apportionment between several shore owners in a cove on Green Bay.

In *Hardin v. Jordan*, 140 U. S. 402, the Court say:

"If there should arise any question between the plaintiff and other riparian owners of lands situated on the margin of the lake as to the convergence of the side lines of the plaintiff's land in the lake, it can be disposed of by the parties themselves, by a resort to equity or to such other form of procedure as may be proper."

See, also, *Gouverneur v. Ice Co., supra.*

In the present case it is practically conceded by plaintiff that, unless the rule contended for by it is applicable, the judgment below was correct.

The judgment is therefore affirmed.

The other Justices concurred.