## TEXAS RANGER PRODUCING & REFINING CO. v. ROBINSON.

(Circuit Court of Appeals, Fifth Circuit. April 7, 1921.)

No. 3674.

Appeal and error ⊜⟿717—Opinion of lower court not a substitute for bill of exceptions.

The opinion of the lower court, which is required to be printed in the record merely for the information of the appellate court, is not a substitute for the bill of exceptions, and cannot be treated as findings of fact by the trial court, so that assignments of error dependent entirely on the findings of fact made by the trial court cannot be reviewed, where the bill of exceptions contains neither any evidence nor any of the findings of fact on which the judgment was based, though the opinion indicates the view of the facts taken by the court.

In Error to the District Court of the United States for the Western District of Louisiana; G. Whitfield Jack, Judge.

Action by the Texas Ranger Producing & Refining Company against E. T. Robinson to recover possession of a tract of land. Judgment for defendant, and plaintiff brings error. Affirmed.

⊜⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Cecil H. Smith, of Sherman, Tex., and Andrew D. Keeney and ,Edward Barnett, both of Shreveport, La., for plaintiff in error.

J: D. Wilkinson, of Shreveport, La. (Wilkinson, Lewis & Wilkinson, of Shreveport, La., on the brief), for defendant in error.

Before WALKER, BRYAN, and KING, Circuit Judges.

BRYAN, Circuit Judge. The case is stated in the opinion of the trial court, which is as follows:

"Plaintiff, alleging himself to be the owner of a certain oil lease on lands owned by the defendant, brings this suit at law to recover possession of a portion of the land alleged to be included in the lease which is now occupied by the defendant, and on which he had drilled an oil well. The lease was originally made by Robinson to one Dorn, and thereafter passed by mesne conveyances to the plaintiff.

"Section 32, in which the land is situated, is a fractional section, surveyed into lots numbered from one to thirteen. Most of these lots are the customary quarter quarter sections of 40 acres, though one of the lots, No. 3, contains 59.67 acres, and another, No. 6, contains 42.88 acres or, to be accurate, such were their areas at the time of the government survey in 1833. Red river, running through the N. ½ of the section, as shown by the original plat, cuts off almost all of what would have been the E. ½ of the N. E. ¼. The fractional N. W. ¼ of the N. E. ¼ appears as lot 1, containing 27.33 acres, and the S. W. ¼ of the N. E. ¼ is platted as lot 5, containing 40.18 acres. Lot 6, containing 42.88 acres, includes the N. E. ¼ of the S. E. ¼ and a narrow strip of land· containing 2.88 acres running up into the N. E. ¼ between lot 5 and the river. Since the original survey, all of lot 1 and a portion of lot 5 has caved into the river, and opposite the narrow·strip of lot 6 in the N. E. ¼ batture has formed containing 34.64 acres.

"The land in the lease from Robinson to Dorn is described as the N. E. fractional quarter of section 32, township 13, range 10, containing 31.2 acres, more or less, and⸱the issue is whether such N. E. fractional quarter includes the neck of lot 6, containing at the time of the survey 2.88 acres, and the batture thereafter formed opposite thereto, ₍making a total of 40.33 acres.

"On the government plat the east and west center section line extends up to, but not through, lot 6. If it were now extended through lot 6, the land in controversy would be in the N. E. ¼, the description given in the lease. The section having been surveyed and platted as above stated, the plat does not show a fractional N. E. ¼ with complete boundary line, but it does show the lines of the thirteen lots into which it is divided. The land embraced in the lease should therefore have been described by lot numbers. Differing from the case of Brown v. Clements, 3 How. 650, 11 L. Ed. 767, the subdivisions of the fractional N. E. ¼ into irregular lots was not unauthorized by law. It could not be divided into squares of 40 acres.

"Plaintiff's original authors in title were Meadows and Sickles. To Meadows there was patented 'lots 1 and 5 or fractional N. E. ¼, S. of R.' (south of river), and to Sickles the patent read to lot 6. It thus appears that the land office considered lots 1 and 5 as comprising the fractional N. E. ¼, and by the fractional N. E. ¼ meant lots 1 and 5. This use and meaning of the term 'fractional N. E. ¼' by the government, in the patent, was the same use and meaning of that term intended by the defendant in executing the lease. He had had the land surveyed and a plat thereof made. All of lot 1 having caved into the river, this plat showed only a portion of lot 5, containing 31.2 acres (see Exhibit D–9), and· this is the acreage included in the lease. In the survey made by Dutton, subsequent to the filing of this suit, the acreage of lot 5 is given as 28.83, the reduction due to the caving banks of the river.

"The subsequent transfer of the lease to the plaintiff was by the same description enumerating the same acreage, and there is nothing in the evidence to show that the plaintiff considered he was getting in the lease the

part of section 6 with the batture embracing 34.64 acres now claimed. The sale was not one per aversionem. Phelps v. Wilson, 16 La. 187; Brazeale & Suvell v. Bordelon, 16 La. 335. The land taken possession of by the lessee does not appear to have included the land in controversy on which latter land, north point of lot 6, the defendant bored a well without objection from plaintiff, until the boring had continued some time. The evidence is that the usual custom in leasing land is to lease at a certain price per acre, figuring out the total by the number of acres. The acreage was fixed in the lease 31.2, more or less. Plaintiff now claims more than double that acreage.

"Plaintiff cites the case of Citizens' Bank of Louisiana v. Lenoir et al., 118 La. 720, 43 South. 385. In that case the plaintiff sold to Lenoir the W. ½ of the E. ½ of a section of land said in the deed to contain 50 acres, more or less; whereas, in fact, it did contain 178.31 acres. Alleging that defendant knew the true area of the land, and acted in bad faith, as did his subsequent vendees, made parties to the suit, plaintiff prayed to have the sale set side. No ambiguity was claimed in that case, as in the case at bar, in the description of the land sold, but the error was alleged to have been in the statement of the acreage, and the court held that under the clear provisions of the Code, such error as to quantity does not give rise to an action for the rescission of the sale, but only to an action for a supplement of the price, citing articles of the Civil Code 2492, 2493, 2494, and 2496. The court further remarks that the sale was made 'without warranty as to area, extent or boundaries, and without recourse upon the said bank for any deficiency therein.' With such a warranty, the court said it would seem that the sale would be in the nature of a sale per aversionem (not a sale per aversionem, but of the same effect).

"In the case of McCan v. Le Blanc, 128 La. 88, 54 South. 481, the vendor had sold lots 1, 2, 3, and 4 of a fractional section, yet the court held that it was the intention only to sell a part of these lots. 'The four lots mentioned in the deed,' states the court, 'comprise .159.34 acres. An error of 67.66 acres in the estimate of such a small tract of land was hardly possible.' The court held: 'Where, in an act of sale, there is ambiguity in the description of a tract of land, that construction will be preferred which accords with the acreage recited in the deed, and the possession thereunder of the first purchaser and his assigns.'

"This doctrine is in accord with that of the general law as thus laid down in 13 Cyc. 635: 'Where a deed contains a particular description of the property conveyed it will not be controlled by a recital therein of the quantity unless it clearly appears that it was the intention to convey only a definite quantity. But such a recital may be resorted to for the purpose of making that certain which is uncertain, as where the boundaries of land conveyed are doubtful.'

"The case is not one in which the plaintiff has been misled in his purchase from the vendee. None of its officers has seen fit to testify in the case. The lease called for the same acreage that the lease of his vendee called for, which was all that Robinson meant to include. Reference to the public records would have shown that, by the N. E. fractional quarter was meant lots 1 and 2 (5), and what was left of these lots was the exact acreage which plaintiff leased and received.

"A judgment will be entered, rejecting plaintiff's demands, at his costs."

A jury was waived, but whether orally or in writing does not appear. The sufficiency of the answer is not drawn in question, but the assignments of error are dependent entirely upon the findings of fact made by the trial court. The bill of exceptions contains neither any evidence nor any of the findings of fact upon which the judgment was based. In this condition of the record, there is no question presented by the assignments of error for our consideration. We may not properly treat the opinion of the court as findings of fact. It is not incorporated in the bill of exceptions, and has no place there. It is required to be printed in the record merely for our information as to the views of

the trial court. It is not a substitute for, and cannot take the place of, a bill of exceptions. Ogden City v. Weaver, 108 Fed. 564, 47 C. C. A. 485; Keeley v. Ophir Hill Consolidated Mining Co., 169 Fed. 598, 95 C. C. A. 96; Nowata County Gas Co. v. Henry Oil Co. (C. C. A.) 269 Fed. 742.

The judgment is affirmed.