DOWNING v. BIRNEY.

1. DEEDS—CONSTRUCTION—WORDS OF INHERITANCE.

The word "children," when used in a deed, applies primarily to a specific and determinable class, and will not, in the absence of words in the instrument or of extraneous circumstances showing such to have been the intent, be construed as a word of inheritance synonymous with "issue" or "heirs."

2. SAME—ESTATES IN LAND.

Under a deed which does not in the granting clause state the duration of the estate conveyed to the grantee, but provides in the *habendum* clause that she is to hold the property to herself, to the children of her body begotten by her present husband, to her heirs, executors, and to the assigns of herself and husband, the grantee takes a life estate, with an estate in fee in expectancy to her or her heirs, or to the assigns of herself and husband, subject to a contingent life estate in the children.

Error to Bay; Wilber, J., presiding. Submitted February 11, 1897. Decided April 27, 1897.

Ejectment by Parmelia Downing and others against Henry Birney and another. From a judgment for plaintiffs on verdict directed by the court, defendants bring error. Reversed.

*Simonson, Gillett & Courtright* (*E. A. Cooley* and *George P. Cobb*, of counsel), for appellants.

*James Van Kleeck*, for appellees.

HOOKER, J. On February 6, 1851, James G. Birney made a deed of the premises described in the declaration, of which the following is a copy of the important part, viz.:

"And Lorainie Spicer, wife of Ezekiel Spicer, of the same place, of the second part, witnesseth, that, in con-

sideration of one hundred dollars paid by the said Ezekiel Spicer to the parties of the first part, they have bargained and sold and do hereby convey to the said Lorainie Spicer the lots known as numbered eight and nine (8 and 9) in square numbered forty-eight (48) in the village of Lower Saginaw, above mentioned, according to the lithograph map of it published by Green and McGowan. To have and to hold the said lots to the said Lorainie, to the children of her body begotten by the said Ezekiel, to her heirs, executors, and to the assigns of the said Lorainie and Ezekiel, forever; and the said James G. Birney, for himself, his heirs, executors, and administrators, hereby covenant and agree that he will at all times defend the lawful title hereby conveyed, to the said lots, of the said Lorainie, to the children of her body begotten by the said Ezekiel, to her heirs, executors, and to the assigns of the said Lorainie and Ezekiel, against the claim or claims of all persons whomsoever."

The plaintiffs are three of four children of Ezekiel and Lorainie Spicer, two of whom were born after the deed was made, and, of two living at the time, one is a plaintiff, and one died leaving no issue; and it is claimed by the plaintiffs that they and Lorainie Spicer, their mother, inherited each one-fourth of this share, *i. e.*, one-sixteenth of the entire premises, and they have joined as plaintiffs, claiming the undivided fifteen-sixteenths. The defendants are in possession under a deed purporting to convey the entire title, from Lorainie Spicer, made after the death of Ezekiel Spicer; and, she having married again, her husband joined in the conveyance. The claim of the plaintiffs is that this deed from Birney conveyed a life estate to Lorainie, with remainder in fee to the children of herself and Ezekiel, while the defendants claim (1) that this deed attempted to create an estate tail, and therefore Lorainie took title in fee simple, by virtue of the statute (2 How. Stat. § 5519); and, failing in that contention, (2) that the land was conveyed in fee, and in moieties (or at least in fifths), to her and the children of her body, by Ezekiel, as a class.

We may dispose of this second suggestion first. It is noticeable that in its premises the deed makes Lorainie

Spicer the only grantee, and the grant, being without words of inheritance or express limitation, would, if nothing further appeared in the deed, be construed as conveying to her a life estate. But the *habendum* is not silent, and was undoubtedly designed to qualify or supplement the premises in some way, which it may legally do, even to the enlargement of the estate granted, or the creation of new estates in new parties, who may be introduced by the *habendum* for that purpose. But it is said that a party thus introduced cannot take as grantee, being a stranger to the premises (*i. e.*, not mentioned in the granting clause of the deed), but he may take by way of remainder. 3 Leon. 60, cited in *Blair* v. *Osborne*, 84 N. C. 420. If this is so, it would be conclusive upon the moiety question; for, although the *habendum* may be said to couple the name of Lorainie Spicer with the class called her "children," the estate conveyed would be a remainder, and not, like her own, an immediate estate. Again, to sustain this theory we should have to make a change in the person and number of the personal pronoun, in the words of inheritance, by substituting "their" for "her." But, again, we are of the opinion that it was not the intention of the grantor to dispose of the land in this way. We have no doubt that it was designed that Lorainie should have a life estate, at least, in the entire premises. Everything indicates it. *First*, we have the grant, which, standing alone, is clearly that; *second*, the clause in the *habendum* mentioning the children contains no words of inheritance, which would be necessary to give them a fee simple; and, *third*, it seems to have been contemplated that Lorainie and her husband might, in some contingency not clearly indicated, dispose of the premises, while such a provision as to the right of the children is significantly wanting.

So we may first inquire whether we may find a life estate in Lorainie, with a remainder, or must say that the deed was an attempt to create an estate tail, which, under the statute, vested the fee in her. If we should say

that the effect of the grant was to convey a life estate to Lorainie, and that the *habendum* introduced the children for the purpose of giving them a remainder, it becomes important to know what the nature of that remainder is. If we should conclude that it was intended to give to the children an absolute fee after the termination of Lorainie's life estate, it would be difficult to avoid the conclusion that an estate tail was the object of the deed, and it could only be avoided, if at all, because they were introduced by the *habendum* instead of the grant. If, on the other hand, we can say that the estate conveyed to the children was not designed to be an estate of inheritance, it would strengthen the claim that theirs was a second life estate. There are two ways in which a design to give them an inheritance might appear: *First,* by the introduction of words of inheritance, following the words "children of her body begotten," etc., distinctly applied to them, or, what would amount to the same thing, construing the words "her heirs" to mean "their heirs;" *second,* by construing the words "children of her body" to mean "heirs of her body," or "issue." There are no words of inheritance distinctly and clearly appearing to have been intended to apply to the "children," and we think that there are obstacles to a construction of the words "her heirs" that would supply the want of them. What, then, is meant by the words "children of her body begotten by the said Ezekiel?"

It seems to be conceded that whatever estate was conveyed to the children, intentionally or through the futile attempt at an entail, if it were such, was not to the exclusion of the children subsequently born. Counsel for the defendants necessarily take that view when they argue that this was an estate in tail. The plaintiffs' counsel unqualifiedly admits it in his brief, and apparently supports it by the argument that inasmuch as their estate is not a grant, but a remainder, the rule that would have excluded them if described in the grant does not apply, and, as unborn children may take an estate in remainder with

others, it follows that such must be the effect; citing 2 Bl. Comm. 170.   Whether this necessarily follows when the terms used here appear in the *habendum*, we do not find it necessary to determine; but assuming, as counsel do, that all of the children shared in whatever estate followed Lorainie's life estate, we will proceed to inquire concerning its nature.

As intimated, unless the word "children" is to be construed as synonymous with "issue" or "heirs," they took no estate of inheritance.   There might possibly be circumstances where "children of her body begotten" might be held to mean lineal descendants of any degree; but, without words in the instrument or extraneous circumstances tending strongly to show an intention that such meaning should be given, it would do violence to the common understanding of both words "children" and "begotten." The word "children" usually means "descendants of the first degree," and "to beget" is to procreate, as a father or sire.   The word "children" is usually confined to immediate descendants,—those of the first generation.  'It includes neither grandchildren nor more remote descendants.   See authorities cited in 3 Am. & Eng. Enc. Law, 231.   And it is said that "the word 'children' may acquire a more extensive meaning only from the context in which it occurs, or from its use in a case where the person using it must know that there neither then is, nor can afterwards be, any person within the first generation to whom it can be applied." *Willis* v. *Jenkins*, 30 Ga. 167; *In re Chapoton's Estate*, 104 Mich. 11; *Tillinghast* v. *D'Wolf*, 8 R. I. 69.   The instances are perhaps more common where the word "heirs" or "issue" is construed to mean "children."   Such a case is *Tucker* v. *Tucker*, 78 Ky. 503, cited by counsel, where the meaning is obvious from the context, though in these cases it is probable that the same rule (*i. e.*, necessity or obvious intent) applies. It has been said that: "The word 'children,' being confined to issue in the first degree, consequently, when used in a deed or will, applies primarily to a specific and determina-

ble class. It is *designatio personæ*, and indicates, not heritable succession, but individual acquisition. It is a word not only of limitation, but of purchase." And to this rule it is said : "There is no exception in the case of deeds." Therefore the term "children of her body" should not be considered "words of inheritance." See 3 Am. & Eng. Enc. Law, 232, note 1. See, also, *Ross* v. *Adams*, 28 N. J. Law, 171, 172. In the case before us, if we have a conveyance to Lorainie Spicer for life, and to certain children of her body, not named, but classified, and, as already shown, there are no words of inheritance expressed, or that may be implied, which can make their estate one of inheritance, upon the death of Lorainie Spicer they would come into possession, according to the terms of the deed, as life tenants. Such a case was *Blair* v. *Osborne*, 84 N. C. 420. There the *grant* was to Araminta Blair, *habendum* to her and the children begotten upon her body by S. M. Blair, *forever*. It was held that in such a case the children (of the first generation) took a remainder for life, as joint tenants. By referring to the deed in the present case, it may be said that Lorainie Spicer was granted a life estate. The children were introduced as life tenants in remainder, in the *habendum*, as was done in the case of *Blair* v. *Osborne*. The only difference would be that under our statute (2 How. Stat. §§ 5560, 5561) the children would take in common, and not as joint tenants. *Mullreed* v. *Clark*, 110 Mich. 229.

This brings us to the other clause of the *habendum*, viz. : "To her heirs, executors, and to the assigns of the said Lorainie and Ezekiel, forever." We have indicated that we think that this refers to Lorainie Spicer. It is her heirs and her executors, and the assigns of herself and Ezekiel, who were apparently in the mind of the grantor. Were these words omitted, the conclusion that Lorainie, and the class described as her children, would have taken successive life estates, is irresistible; and that the donor would have owned the reversionary interest is plain. It is equally

clear that, but for the provision regarding the children, the introduction of these words of inheritance would have enlarged the estate granted to Lorainie to a fee simple. So we have reduced the case to this narrow question,— whether they could have that effect, and thereby cut off the estate attempted to be conveyed to the children.

In determining the effect of a *habendum* upon a grant, we should do violence to the settled rules of construction were we not to determine the meaning of the conflicting provisions of the *habendum* by determining the intent of the grantor, as expressed in the *habendum*, so far as it could be determined from the instrument; and, having done this, we would then determine its effect upon the grant. To our minds, it is obvious that the first object was to secure to Lorainie Spicer an estate for life, and, second, that the children should enjoy a life estate in remainder; and we will not be justified in holding it to have been defeated by so technical a rule as that suggested above, unless it cannot be legitimately avoided. Following the discussion of the grantor's intent into the realm of reasonable speculation, it would seem plausible that he wished to provide for a full enjoyment of the estate by Lorainie when the time should arrive (if it ever did) that the possibility of issue begotten by Ezekiel should be extinct. This might obviously happen through the death, or possibly the divorce, of Ezekiel without such issue living, or the subsequent death of such children. If the *habendum* had stopped at the word "heirs," this deed would have created an expectant estate in fee simple in Lorainie Spicer's general heirs (2 How. Stat. § 5544; *Defreese* v. *Lake*, 109 Mich. 415), to become operative upon the termination of the life estates of the children (see 2 How. Stat. § 5544; *Defreese* v. *Lake*, 109 Mich. 415), and could not be said to have been an enlargement of the life estate granted to Lorainie. This would have cut off the reversion. But apparently the grantor sought to do more, and convey an estate to Lorainie in fee after the possibility of the second life

estate extinct, and, in addition to that, to allow Lorainie, with the consent of her husband, Ezekiel, to convey the expectant estate in fee to the exclusion of her general heirs.

There are two ways in which the plaintiffs can sustain their title: (1) By saying that Lorainie's life estate and the estate in expectancy merged in her, to the exclusion of the intermediate life estate, which has already been discussed. (2) By saying that the deed from Lorainie Spicer conveyed nothing, as in such case her estate in expectancy, if she had one, descended to them, provided that they were her only heirs; and, if she had not, such estate came to them as her general heirs, under the terms of the Birney deed. We are of the opinion that it was competent to create an estate in fee in expectancy, and had the *habendum* read, "To said Lorainie Spicer, to the children of her body begotten by the said Ezekiel, to her, and her heirs, executors, and assigns," we should have no doubt that the grantor had intended to convey to her the estate that would have otherwise reverted to him at the expiration of the life estates. This estate might be contingent under 2 How. Stat. § 5541; and it would be alienable and descendible under 2 How. Stat. § 5551. But the language was not that, and we must either hold that the intent failed, so far as she was concerned, and that the estate went to her heirs, or that the obvious intent was to convey to her, her heirs, executors, etc. This latter construction is supported by the fact that the deed professed to give to her the power to assign,—coupled with the requirement that Ezekiel Spicer should join, it is true, but dependent upon title. If she had no title, she would have nothing to assign, nor would Spicer. Upon the other hand, it may be said that, if she had title, Spicer certainly had nothing to assign, and it was therefore superfluous to mention him. This is perhaps true, though we should not overlook the fact that the married woman's act was not in force at the time that the Birney deed was

made, and that under the common law the husband, by virtue of the marriage, acquired a life interest in the property; and, furthermore, she was incapacitated by coverture, and could not convey her real estate by deed, except as she joined her husband in such conveyance. Again, 2 How. Stat. § 5770, which was in force at the time this deed was executed, made a radical innovation on the husband's rights as tenant by curtesy. It does not appear whether Lorainie had children by a former husband, but, if she had, it was possible that she might at her death leave issue who would take the estate discharged of the estate by the curtesy, thus excluding Ezekiel, whose money actually paid for the property. These reflections suggest possible reasons for a supposed necessity for the mention of Ezekiel. It is true that we need not concern ourselves with these, for they do not strengthen the plaintiffs' claim that the children took an estate in fee by way of remainder. To so hold, we must construe the deed as reading, "to the children of her body and their heirs," and we would be obliged also to hold that this did not constitute Lorainie a tenant in tail. In our opinion, it was the obvious intent of the grantor to give to Lorainie Spicer the fee of this estate, subject to a contingent life estate in a certain class of her children. To more certainly accomplish this, and avoid the statute docking entails, the conveyancer sought to create two successive life estates, with an estate in fee in expectancy. In the ordinary course of events, it would be expected to go to Lorainie's general heirs, if she did not convey the expectancy in fee; but, in case of her living after possibility of issue (by Ezekiel) extinct, this estate would merge with her life estate still existing, and give her the fee in possession. In this connection we do not overlook some provisions of the statute which might be of interest, notably sections 5533 and 5546, but they are unimportant under the view we take of the case.

It follows that the plaintiffs, or some of them, are own-

ers of a life estate in these premises, while the defendants own a remainder in fee in expectancy.

The judgment must be reversed, and the plaintiffs allowed a new trial.   Ordered accordingly.

The other Justices concurred.