120    51
j144   402
j144   407

120    51
148   493

CHICAGO LUMBERING CO. *v.* POWELL.

1. TRUST DEED—POWERS OF TRUSTEE—NONRESIDENTS—FOREIGN STATUTES.

An insolvent in England, having instituted proceedings under the English bankruptcy act for a composition with his creditors, executed, and recorded in this State, a certain deed, which, after reciting a meeting of creditors and the choice of a certain person as trustee, conveyed to such person, " as trustee for the benefit and security of creditors," certain lands situate in this State. *Held*, that resort might be had to the bankruptcy act to determine the powers conferred on the trustee, although the law itself could have no extraterritorial force.

2. SAME—VALIDITY.

It appearing that a trustee under the bankruptcy act has power to convey, the deed in question is sustainable in this State under 2 How. Stat. § 5573, subd. 1, as a conveyance creating an express trust to sell lands for the benefit of creditors.

3. SAME—DELEGATION OF TRUST—ATTORNEY IN FACT.

It is not a delegation of the trust for a nonresident trustee to execute a contract through a resident attorney in fact.

4. LAND CONTRACT—ABSENCE OF WITNESSES—SPECIFIC PERFORMANCE—SUFFICIENCY OF BILL.

2 How. Stat. § 5727, provides that no instrument intended to operate as a conveyance, made in good faith and upon a valuable consideration, shall be wholly void by reason of a defect in the statutory requisite as to attestation, but that the same may be allowed to operate as an agreement to convey, and may be enforced specifically by suit in equity, subject to the rights of subsequent good-faith purchasers. Complainant's bill contained allegations showing a right to certain timber under a contract not witnessed, defendant's subsequent acquisition of title subject to complainant's right, his denial of complainant's interest, and his threat to destroy it. The bill prayed that defendant be decreed to release his pretended claim, and be enjoined from further asserting it. *Held*, that, in the absence of demurrer, it was sufficient as a bill for specific performance.

5. SAME—RESERVATION IN DEED.

A deed of land "subject to all existing * * * timber contracts" is subject to all such contracts, whether recorded or not.

6. SAME.

And no greater estate than that acquired by such deed can be conveyed by the grantee therein by the addition of the words "of record" to a like clause in a deed executed by him.

7. DEEDS—HABENDUM CLAUSE—EFFECT.

Although, in case of inconsistency between the granting clause and the *habendum* in a deed, the former usually governs, if it clearly appears from the whole instrument that it was the intention of the grantor to enlarge or restrict the granting clause by the *habendum,* the latter will control.

8. SAME.

Thus, the words "subject to all existing timber contracts," contained in the *habendum* clause, constitute a valid limitation upon the estate conveyed.

Appeal from Schoolcraft; Steere, J. Submitted January 26, 1899. Decided April 25, 1899.

Bill by the Chicago Lumbering Company against Daniel W. Powell and others to quiet title to certain timber. From a decree for complainant, defendants appeal. Affirmed.

*Ball & Ball* (*Clark & Pearl*, of counsel), for complainant.

*A. B Eldredge* (*T. E. Tarsney*, of counsel), for defendants.

HOOKER, J. The bill of complaint was filed to restrain the defendants from cutting timber upon premises which the complainant claimed to own. The pleadings raise a question of ownership between the parties, and the defendants appeal from an adverse decree.

A stipulation shows that Jonathan Nield was the owner of the land on May 22, 1879, and the proof discloses that upon that day Nield and wife made a deed of the land

to Adam Murray, of Manchester, England. The deed
recites that:

" *Whereas*, at a meeting of the creditors of the said
Jonathan Nield, duly convened and holden on the twenty-
seventh day of January, in the year of our Lord one
thousand eight hundred and seventy-nine, the said Adam
Murray was chosen to be trustee of the separate estate of
the said Jonathan Nield;

" *And whereas*, the said Adam Murray, as such trus-
tee, has requested the said Jonathan Nield to execute a
conveyance to him, the said Adam Murray, as such trus-
tee as aforesaid, of the lands hereinafter described or in-
tended so to be, with their appurtenances, and the said
Jonathan Nield has agreed to make the said conveyance:

" *Now, therefore, these presents witness* that in pur-
suance of the said agreement, and in consideration of the
sum of one dollar, lawful money of the United States of
America, to them in hand paid at or before the sealing
and delivery of these presents, receipt whereof is hereby
acknowledged; the said parties of the first part have
granted, bargained, sold, conveyed, and confirmed, and
do hereby grant, bargain, sell, convey, and confirm, unto
the said Adam Murray, party of the second part, as trus-
tee for the benefit and security of the creditors of the
aforesaid Jonathan Nield, his heirs, successors, and as-
signs, all of the following pieces or parcels of land situate
in the State of Michigan, to wit."

It was recorded in the register's office for the county of
Schoolcraft on July 24, 1879.

A power of attorney from Adam Murray to Reginald
William Petre, executed August 8, 1879, and recorded in
said office April 14, 1881, was introduced. It authorized
Petre to sell all lands deeded to Murray by Nield, to lease
the same, and to sell and dispose of timber growing there-
on. Both instruments were executed in England. Petre,
as attorney for Murray, on June 8, 1882, sold the timber
on the land to Ross & Co. by an instrument in writing,
reading as follows:

"In consideration of the sum of $2,340, to be paid in
form of a draft on Ross & Co., of Quebec, Canada, I
hereby sell the pine timber standing, lying, and being on

the following-described lands in the county of Schoolcraft, State of Michigan, to the said Ross & Co., being on an estimate of 200 ft. B. M. to the acre."

It described the land, and was signed:

" Adam Murray, Trustee, per Reginald W. Petre Attorney in Fact."

It was neither witnessed nor acknowledged, and was not, therefore, entitled to record.

On March 10, 1893, Adam Murray conveyed the land to the North of England Trustee Debenture & Assets Corporation, and its deed was recorded on April 17, 1894. This conveyance was "subject to all existing * * * timber contracts." On December 20, 1894, the North of England Trustee Debenture & Assets Corporation deeded the land to the Lac la Belle Company, "subject to all existing * * * timber contracts of record." The complainant acquired the interest of Ross, while the defendants have succeeded to the interest of the Lac la Belle Company.

The defendants oppose the relief sought upon the following grounds:

1. That Petre had no authority to make the timber contract.

2. That, if he had, the instrument was insufficient to convey an interest in land.

3. That, under the recording laws, the defendants were *bona fide* purchasers, and took the land discharged from the timber contract.

The record shows that Nield and his associates in business, all residents of England, being insolvent, instituted proceedings upon their own behalf, for a composition with their creditors, by filing a petition in the county court of Lancashire, under the English bankruptcy act, and Adam Murray was appointed trustee. The bankruptcy act was introduced for the purpose of showing what powers are given to a trustee by that act; and it seems to be conceded that the power to convey, directly or through attorney, is

among them.   The conveyance to Murray was voluntary,
and the deed, taken in connection with the proceedings
under which the trust was assumed, shows that it was
the intention that he should dispose of the property for
the benefit of Nield's creditors.   The deed has referred to
these proceedings, and they may be considered in the
attempt to ascertain what interest Murray obtained by
the deed.   It is urged that these proceedings have no
extraterritorial force, and that the complainant cannot
assert a claim under the foreign bankruptcy proceedings.
We understand that the title claimed is not a judicial title.
The evidence shows, on the contrary, that the deed was
given to the trustee in pursuance of an amicable arrange-
ment between Nield and some persons professing to be his
creditors, whereby it was mutually agreed that Murray
should take the title of the land, as trustee, for the purpose
of the liquidation of the affairs of Nield by arrangement,
and not in bankruptcy.   The title was accordingly con-
veyed to Murray by Nield.

In *Graydon* v. *Church*, 7 Mich. 51, it was said that the
courts of one State have no power to make their judg-
ments and decrees operate directly upon property in
another; and in that case, if the receiver's rights in real
property had been left to depend upon the decree of the
New York court, they could not be recognized in this
State.   But an *assignment* had been made to the receiver,
and this was respected.

In *Wood* v. *Parsons*, 27 Mich. 163, the court recog-
nized the rule that laws enacted by one sovereignty can
have no force within the territory of another, but added:

· " Had the insolvent in this case, with or without the in-
tervention or order of the court, made an assignment of
this property to Wood, the plaintiff, we see no reason to
doubt that such assignment would have operated as a con-
veyance of the title to any property of the insolvent here,
except possibly, in some cases, as against the claims of
creditors here."

Again, in *Burrows* v. *Keays*, 37 Mich. 435, this court
said:

"A reference to the assignment shows that 'the said party of the first part [Burrows], being insolvent, has voluntarily assigned, and hereby doth voluntarily assign, to the said party of the second part [Keays], all of his estate and effects, real and personal, of every nature and kind whatsoever.' This, we think, is sufficiently full and complete to transfer and pass the title to the plaintiff to the property in question, and gives him a right to come into court and enforce and protect such title, as against the claims of the assignor. Any other view, assuming the position of defendant to be correct, would enable a debtor residing in Canada to send his property into this State, then make a voluntary assignment for the benefit of his creditors, and at once come here and enjoy his property, without any power in the assignee to follow him and obtain possession thereof. This branch of the case very closely resembles *Graydon* v. *Church*, 7 Mich. 50, where the same questions were discussed, and the conclusion there arrived at must govern and determine in this case."

It is said that the deed shows that the property was conveyed to Murray in trust, and that no estate vested under our statute. 2 How. Stat. § 5573, permits the creation of express trusts to sell lands for the benefit of creditors. The deed in question recites that at a meeting of the creditors of Nield, duly convened, Adam Murray was chosen trustee, and that Nield agreed to make to him (Murray), as such trustee, a conveyance of the land therein described, and it proceeds to grant the property unto Adam Murray, as trustee for the benefit and security of the creditors of Jonathan Nield. This deed, of itself and alone, shows that the property was deeded to Murray in trust for the benefit and security of Nield's creditors. It does not in express terms authorize Murray to sell the land for the benefit of creditors. Were it to be conceded that the deed fails to show upon its face an authority to sell for the benefit of Nield's creditors, and that such power cannot be implied from its language, unexplained, the fact remains that the deed clearly shows that the intention of Nield was to convey to Murray, not in his own right, and not in the capacity of trustee simply, but in the capacity of trustee under an appointment recited in the deed itself; and the

plain implication is that the land was subjected to such dispositions as the powers conferred upon him as such trustee permitted him to exercise. It is elementary that the effect of conveyances of land may be affected and limited by other papers to which they refer. Perhaps the most common instances are where land is conveyed subject to outstanding mortgages or contracts to which the deeds refer. In such cases the deeds are construed in the light of such instruments. It is urged that the rule is that the intention of the parties is to be ascertained "by considering all the provisions of the deed, as well as the situation of the parties." See 2 Devl. Deeds (2d Ed.), §§ 836, 839, 840, and cases cited. Counsel cite a number of cases supporting the rule, among them *Chapman* v. *Crooks*, 41 Mich. 595; *Stanley* v. *Green*, 12 Cal. 148; *Mulford* v. *Le Franc*, 26 Cal. 88; *Field* v. *Huston*, 21 Me. 69; *Wilson* v. *Hoffman*, 70 Mich. 552. We are satisfied that the deed should be sustained, under subdivision 1 of section 5573, as a conveyance creating an express trust to sell lands for the benefit of creditors. By the terms of the deed, the powers of the trustee over this land were recognized. It is as though the instrument defining them were incorporated in the deed. We have no occasion to inquire whether the bankruptcy proceedings were regular, for Nield has consented to deed this land to a trustee having powers defined by that law. Hence, Murray is not a trustee with such powers and duties (only) as vest in such trustees under Michigan law, but with such powers as Nield voluntarily gave him; and, not being contrary to the law of this State, the trustee may exercise the powers conferred.

We are satisfied that, under the authorities, Murray might execute the timber contract through an attorney. See 1 Perry, Trusts, § 409, and note. Moreover, we understand that the power was expressly conferred.

Defendants' next contention is that the timber contract was void, because not witnessed, under the doctrine laid down in *Crane* v. *Reeder*, 21 Mich. 61 (4 Am. Rep. 430).

We think it unnecessary to discuss this question, as the instrument certainly conferred an equity under 2 How. Stat. § 5727. It is said that, if this section saves the instrument, "it can only be enforced specifically in an appropriate proceeding, and cannot be held operative to transfer *in præsenti* the title to this timber, and is not available in this proceeding." The bill contains allegations which show complainant's rights to this timber, and that the defendants claim title to the premises under a subsequent conveyance from Murray, whereby they acquired title subject to complainant's rights, but that they deny complainant's interest, and threaten to destroy it. It prays that the defendants be decreed to release their pretended claim to such interest, and that they be enjoined from asserting any title to the timber, or preventing complainant from removing the same. In the absence of a demurrer, the bill should be held sufficient as a bill for specific performance, if such a bill were necessary for the relief of the complainant.

It remains to consider whether the defendants were *bona fide* purchasers without notice of complainant's rights, and therefore protected against them by the recording act. It is admitted that they paid value for their conveyance, but the important question is whether they bought the timber. This must depend on the effect of the deed from Murray to the North British Company, for the insertion of the words "of record" in the deed given by the company did not serve to convey any greater interest than its recorded conveyance showed that it took from Murray. That deed expressly limited the interest conveyed by making it "subject to all existing rights of way, easements, and timber contracts." The substance of defendants' contention is that this should be limited by the recording act, and should not protect any timber contracts that were not recorded. The deed did not purport to convey any timber that had been contracted; it excluded it. Upon its face, it informed the grantee that there were interests that the grantor did not possess. It

did not describe these contracts definitely, as it might have done. It did not except those merely which were recorded; it used the comprehensive term "all." It was as though one should deed a village plat subject to all outstanding contracts for lots. Upon its face, there is a limitation upon the estate which might extend to all of the timber, for all might have been contracted. The recording act does not protect the defendants in their claim for this timber, because their own deed does not purport to convey it. It is urged that, inasmuch as the provision is contained in the *habendum* clause of the deed, it is not a limitation upon the estate. We are of the opinion that this is not a case for the application of such a rule. As a rule, the granting clause prevails over the *habendum* where their respective limitations are inconsistent; but it has always been held that the *habendum* was designed to denote the extent of the estate granted. See 1 Devl. Deeds (2d Ed.), § 213. The same author says (section 214) that:

"Where proper words of limitation are employed in the granting clause, there is no benefit to be obtained by the *habendum*. Where there is a repugnance between the words expressing the grant and the *habendum* concerning the estate the grantee is to take, the rule governing the construction of all contracts will be applied, and effect will be given to both clauses, if possible; yet where there is a definite limitation in the words of the grant, and there is a conflict between them and the *habendum*, the latter must yield. If it appears from the whole instrument that it was intended by the *habendum* clause to restrict or enlarge the estate conveyed by the words of grant, the *habendum* clause will prevail."

Again, in section 215a, the author says:

"*When Habendum Controls.* It may be formulated as a rule that, where it is impossible to determine from the deed and surrounding circumstances that the grantor intended the *habendum* to control, the granting words will govern; but, if it clearly appears that it was the intention of the grantor to enlarge or restrict the granting clause by the *habendum*, the latter must control. In a

deed from a husband to his wife, after the *habendum* clause was a condition that she should not convey or mortgage the premises without his written assent, and that, in the event of her death occurring before his, the property conveyed should revert to him or his assigns. The court construed the deed as showing an apparent intention that the grantee's interest should cease if she died before the grantor, but that, if she survived him, the absolute title should become vested in her."

*Downing* v. *Birney*, 112 Mich. 474, recognizes this doctrine. It is there said:

"But the *habendum* is not silent, and was undoubtedly designed to qualify or supplement the premises in some way, which it may legally do, even to the enlargement of the estate granted, or the creation of new estates in new parties, who may be introduced by the *habendum* for that purpose."

We are satisfied that the intention of the parties, as evidenced by the deed to the North British Company, was to exclude the timber rights from the conveyance.

The decree of the circuit court in chancery is affirmed, with costs.

GRANT, C. J., MOORE and LONG, JJ., concurred. MONTGOMERY, J., did not sit.