## HENSON *v.* GERLOFS.

1. PROPERTY — CHAIN OF TITLE — COMPETING TITLES — FORTY-YEAR STATUTE—PURPOSE OF STATUTE.

Dispute regarding a small parcel of land claimed by plaintiffs under an unbroken chain of title running back to a patent issued by the United States in 1835 that included it and by defendants under a deed to them that is subsequent in time to plaintiffs' patent, describes a parcel including the land in question, and contains a description that has been used in its chain of title since 1853 *held*, properly resolved in favor of defendants under 40-year title act whose purpose it is to erase all ancient mistakes and award clear title to a person who has for 40 years enjoyed record title (CL 1948, § 565.101 *et seq.*, as amended).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 42 Am Jur, Property §§ 36, 41.
[2, 3] 53 Am Jur, Trial §§ 1131, 1133.
[4] 5 Am Jur 2d, Appeal and Error § 545.
[5] 25 Am Jur 2d, Easements and Licenses §§ 39, 41.
[6,7] 25 Am Jur 2d, Easements and Licenses § 120.
[8] 20 Am Jur 2d, Costs § 65.
[9] 5 Am Jur 2d, Appeal and Error §§ 1009, 1014, 1016.

2. TRIAL—NONJURY TRIAL—FINDINGS OF FACT—COURT RULES.

> The trial court must find the facts specially and state separately its conclusions of law thereon in all actions tried upon the facts without a jury; inclusion in an opinion of the court is sufficient (GCR 1963, 517.1).

3. SAME—NONJURY TRIAL—FINDINGS OF FACT—COURT RULES.

> Requirement that trial judge in a nonjury case make findings of fact *held*, complied with where a determination in court's opinion that a public easement by prescription existed necessarily included a factual finding of hostility (GCR 1963, 517.1).

4. APPEAL AND ERROR—PRESERVING QUESTION.

> A theory not asserted at the trial of a cause cannot be asserted for the first time on appeal.

5. PROPERTY—EASEMENTS—PUBLIC EASEMENT BY PRESCRIPTION—EXTENT OF EASEMENT.

> Determination that a public easement by prescription existed for an area of land greater than that which the record indicated was accessible to and used by the public was error as to the excess land.

6. SAME — EASEMENTS — PRESCRIPTION — EXTENT — PROTECTION OF EASEMENT—EQUITY—INJUNCTION.

> Injunction preventing defendant from depositing fill on his property bordering a lake or in the lake itself *held*, limited to apply only to those areas where a public easement by prescription was found to exist, since defendant's activities with respect to the rest of his property are now governed by statute (PA 1965, No 291).

7. SAME—EASEMENTS—PRESCRIPTION—PROTECTION OF EASEMENT—EQUITABLE RELIEF—INJUNCTION.

> Injunction ordering defendant to remove fill already placed on his property on the shore of and in a lake subject to a public easement by prescription *held*, error where there was no finding that the act of placing fill necessarily constituted an interference with boating and fishing rights on the entire surface of the lake, since riparian rights must be clearly shown to have been violated to justify such relief.

8. COSTS—FEES—EXPERT WITNESSES—DISCRETION.

> Award of costs for fees of expert witnesses for time spent in preparation to testify is a matter for discretion of trial court.

9. SAME—NEITHER PARTY PREVAILING IN FULL.
   No costs are awarded on appeal where neither party prevails in full.

Appeal from Kalamazoo, Van Valkenburg (Wade), J. Submitted Division 3 June 6, 1968, at Grand Rapids. (Docket No. 3,628.) Decided September 25, 1968. Rehearing denied November 6, 1968.

Complaint by Fred T. Henson and Gladys I. Henson, and other property owners similarly situated, against Dale Gerlofs and Barbara J. Gerlofs to enjoin defendants' filling operations in proximity to certain lakes on which plaintiffs own property, and for an order requiring defendants to remove fill already placed. Judgment for plaintiffs. Defendants appeal. Affirmed in part and reversed in part.

*Bauckham & Reed,* for plaintiffs.

*Troff, Lilly, Bonow, Piatt & File,* for defendants.

HOLBROOK, J. Plaintiffs, both as riparian property owners and members of the public, brought an action for mandatory injunctive relief against defendants' filling operations in proximity to East and Middle lakes in Kalamazoo county. The defendants have appealed the judgment of the trial court, entered November 25, 1966, permanently enjoining them from continuing their fill operations and requiring them to remove a portion of the fill.

In a non-jury trial, the defendants testified that they intended to improve, for commercial recreation purposes, property lying between 35th street and East and Middle lakes.* There is no dispute that fill

---

* See map next page.

was dumped in several areas along 35th street between the high-water or meander line and the normal shoreline. The areas covered were partially marshy and partially dry land. A great deal of testimony was introduced showing that the general public had used a portion of the areas for recreational purposes (*e.g.,* boating, fishing, swimming, picnicking) since the early 1900's. Other testimony would indicate that some fill might have been dumped into the lake proper allegedly changing the shoreline, reducing the water surface area, and burying certain

old boats moored there.   Plaintiffs also presented other testimony to the effect that springs feeding the lake, valuable spawning beds, and sources of fish food had been damaged.

The trial court determined that defendants held legal title to the subject land area to the east of 35th street bordering East lake.   The court also determined that the public has a continuing right of ingress and egress (an easement by prescription) over the area between 35th street and Middle and East lakes, and that the defendants would be required to remove certain fill dumped along the east side of Middle lake and north of the stream along the west side of East lake.

Before reaching the issues raised by defendants on appeal, our attention is directed to the following issue raised by plaintiffs (cross-appellants): *Do the defendants hold legal title to the property located in the east one-half of the southwest quarter, including the land lying north of the stream between Middle lake and East lake and south of the quarter line of section 25?*

Defendants' deed, dated September 20, 1965, gives the following description:

"The east half of the southwest fractional quarter of Section 25, T 1 S, R 10 W, containing 60 acres more or less; subject to such easements, conditions, restrictions, and limitations in the use thereof which may appear of record."

We are in agreement with the trial court's written opinion concerning title and find it determinative of the above question.   It states in part as follows:

"Exhibit H shows that both lakes, commonly referred to as Middle and East, was at one time only one body of water.   The highway, as shown in exhibit #2, runs along the 8th line and bends to the east

around Middle lake and again intercepts the 8th line at the quarter line. The government records indicate that separate patents were issued for the land south of the lakes and that to the north. The abstract of title indicates that the patent was issued for the southwest quarter of section 25, containing 84.40 acres. Obviously, this is a fractional quarter section. The small area of land north of the stream, therefore, was conveyed by the patent covering the northwest fractional quarter of this section.

"It is the position of the plaintiffs that in view of the fact that the patent for the northwest quarter having been issued on December 1, 1835, means that we have at the present time an unbroken chain of title of record from then to date, which means that Raymond L. Baker and Ruth E. Baker, two of the plaintiffs, now hold title pursuant to that theory.

"The defendants, on the other hand, rely entirely on the deed, being Exhibit #1, and according to the abstract of title, the lands have been conveyed in this manner except for reference to the acreage since 1853. Therefore, it is their claim that by virtue of the 40-year title standard act, [CL 1948, § 565.101 *et seq.*, as amended by PA 1965, No 323; Stat Ann 1953 Rev § 26.1271 *et seq.*] controls and that they have good title to these lands.

"For the record, perhaps it would be well to point out that there are two parcels north of the stream, one being a small triangular piece lying west of the highway and east of the 8th line, and the other an irregular parcel, being east of the highway, south of the quarter line and running east to the shore of East lake.

"The evidence offered at the trial indicates that there was a fence running along the 8th line to the lake, but it was not at all clear as to who had erected it and it seems that one of the owners to the west had at least on one occasion made some repairs. The other parcel to the east is not enclosed but is bordered by the road and the lake, as indicated above.

"Therefore, we have two competing chains of title, the one based on the patent covering the fractional northwest quarter, and the other on the various deeds which have been recorded since 1853. The conclusion will depend upon the application of the 40-year title statute.   *   *   *

"One additional argument made by the defendants is that the deed, being plaintiffs' Exhibit G, wherein the Bakers acquired title to the northwest fractional quarter and other lands, does not convey any property south of the quarter line. Quite likely, the point could be made that as long as this is a fractional quarter that these two parcels would then be included in the east half of the northwest fractional quarter. Therefore, we must determine which chain of title is going to be recognized. Obviously, the fundamental purpose of the statute was to erase all ancient mistakes and errors so that if a party enjoyed a record title for forty years, it would be acceptable to the profession. There is little doubt but what practically every financial institution in Michigan has followed and relied upon this law.

"The plaintiffs do maintain that adverse possession is of no value and that conclusion is correct. It is the record in the office of the register of deeds which controls and possession is of little importance. Nevertheless, we might review for a moment the use that has been made of these two parcels. Apparently, the area west of the highway has been little used and the only evidence of ownership shown during the hearing was that one of the owners allowed a farmer to cut the grass on these parcels and that he at one time had posted a sign. There was no evidence that the Bakers had made any effort to take possession of the two parcels.

"Therefore, after giving careful consideration to the very excellent arguments put forth by both sides, it is the opinion of this court that the more recent record title should prevail and that the 40-year title act should be the one which controls. Accordingly,

it is the finding of the court that the defendants hold
title to both parcels lying north of the stream."

Defendants' first question asks whether the trial
court committed error in refusing to make findings
of fact and conclusions of law as required by GCR
1963, 517.

The defendants fail to specify precisely what find-
ings of fact and conclusions of law the trial court
refused to make. GCR 1963, 517.1 states in part as
follows:

"In all actions tried upon the facts without a jury
or with an advisory jury, the court shall find the
facts specially and state separately its conclusions
of law thereon and direct the entry of the appro-
priate judgment. It will be sufficient if the court
makes brief, definite, and pertinent findings and con-
clusions upon the contested matters without over
elaboration of detail or particularization of facts.
If an opinion or memorandum decision is filed, it
will be sufficient if the findings and conclusions ap-
pear therein."

The written opinion of the trial court contains
numerous relevant findings of fact and conclusions
of law. The trial transcript contains testimony
which would support a factual finding of hostility
of the public user. Since hostility is an element of
prescriptive easement, the trial court's determina-
tion that a public easement by prescription existed
necessarily included a factual finding of hostility.

Defendants' second question asks whether the
trial court committed error in determining that the
past permissive use of access by the general public
ripened into an easement by prescription over all of
defendants' land north of the southerly meander
line of Middle and East lakes.

It is defendants' claim that an easement is in legal
fiction a grant which cannot be made to the public

in general. This theory was not argued to the trial court and in fact it was apparently eliminated by stipulation at the commencement of trial. It cannot be considered now on appeal.

Defendants also claim that the judgment of the trial court determining the existence of a public easement by prescription and enjoining defendants from interfering in any manner with the public easement, is overly extensive as to the land area obtained by prescription and unnecessary as to the injunctive relief granted plaintiffs.

The trial court's judgment reads in part as follows:

"(2). That the general public and owners of land bordering 'Three lakes' have acquired prescriptive rights for access to 'Middle lake' and 'East lake' of said 'Three lakes', and for launching and temporary mooring of boats, boating, fishing, swimming, ice skating, parking of automobiles and picnicking over and across the land of the defendants herein, described as that portion of the east 1/2 of the southwest 1/4 of section 25, T 1 S, R 10 W, lying west of 35th street, (running northerly and southerly through the same), and that portion of said section lying east of said 35th street and north of the meander line of the south shore of 'Three lakes', as hereinbefore described; and the defendants herein, their agents, employees, heirs, successors in title, and assigns are hereby accordingly permanently enjoined from interfering in any manner with said prescriptive rights by any kind of activities, construction, obstruction, or otherwise. However, the public in making use of 'Middle lake' and 'East lake' as above set forth, shall be limited in their activities to those which have already been acquired by the prescriptive rights."

Defendants contend that the public easement by prescription determined by the trial court should be limited to those areas where the general public ac-

tually carried out ingress and egress to Middle and
East lakes.  They admit in their appellate brief ac-
cess by the public to the following areas: (1) access
to East lake in the wintertime over a path located
to the south of the stream between the 2 lakes and
east of 35th street; (2) access to the stream and
to East lake over another path to the north of the
stream to the east of 35th street; (3) access to a
swimming area in Middle lake to the west of 35th
street for approximately 100 feet along 35th street
running from the stream entrance to Middle lake in
a southerly direction; and (4) an area of approxi-
mately 100 to 200 feet along 35th street where ac-
cess had been gained to Middle lake.

Numerous witnesses produced by plaintiffs testi-
fied to the manner and extent of use by the general
public.  The greatest use by the general public of the
land in question as claimed by the public and sup-
ported by the evidence is reflected in the testimony
of plaintiffs' witness Arthur Barber:

"*Q.* At my suggestion, did you make some meas-
urements out there in this area?

"*A.* Yes, we did.

"*Q.* First of all, how did you make your measure-
ments, what did you use to make them?

"*A.* We used a hundred-foot tape.
\*   \*   \*

"*Q.* By the way, these measurements were taken
just recently?

"*A.* They were taken last night.  We started with
the tile that goes under the road, using that as the
center line of that tile as the basis for measure-
ments in this area.  We measured north 106 feet and
this was to a path which went down into the middle
lake to a dock, that used to be a dock where boats
used to be moored.
\*   \*   \*

"*Q.* All right, go ahead.

"*A.* The same measurement, 106 feet north of the center line of the tile, there was another path which still shows in the aerial photo, going back to this little bayou or opening in the creek, which was also used by private and public and commercial fishermen.

"*Q.* All right, proceed.

"*A.* Then we measured south—this measurement was also 106 feet, to this path which shows on the aerial. It's a path from 35th street east out to East lake, which is used extensively during the winter by ice fishermen. This is the only way they have of getting on the lake unless they go over to the former Meyer's property and walk out on their dock and then onto the lake, and this area in here has always been marshy and wet and it doesn't freeze like the rest of the lake. The creek flowing through here keeps this area from freezing over hard so that the general public has used this path, and its still in evidence from this portion of the fill out to the lake. From this portion to the road it has been covered up. [*indicating throughout*]

"*Q.* Any other measurements?

"*A.* We then measured from the center of the tile 100 feet south and this is the area which is used by bathers as a beach more or less. There was never too much beach there—it probably wasn't over 5 or 6 foot from the edge of the blacktop to the water itself. It was a gravel and sand rather there for a hundred feet south of that tile, and within this hundred feet was approximately a 20 to 30-foot strip of sand, sandbar that went out into the lake probably 20 to 30 feet, which was used as a swimming area.

\*     \*     \*

"*Q.* Now, did you make any other measurements?

"*A.* Yes, we did. We went over here on the southeast shore of the lake and we determined approximately where this willow tree was.

"*Q.* How could you determine that, what did you use as a guide?

"*A.* Well, we had about six people who were very familiar with it, and right here there's another tree with the stump still showing—the dirt was just put around it, it wasn't covered—and with that as a more or less a base, we figured that the old willow tree was further south. And from the willow tree, approximately the center of the willow tree, we measured north 20 feet, which was an area used by the public for launching and mooring of boats, and I might add that I have seen people swimming in that area right next to that tree. Then we measured south 468 feet and measured along the road to the south— well, southwest extremity of the boating and fishing area as it was known. That would make a total of 488 feet in this area that was definitely used by the public."

The extent of use by the general public as measured and described by plaintiffs' witness Arthur Barber, coincides substantially with defendants' concessions of areas of access by the general public. The finding of a more extensive easement in the public is without support in the record.

The injunctive portion of the trial court's judgment is too broad. There are unimproved areas bordering Middle and East lakes to which defendants hold title and in the future defendants may wish to develop these areas. Their actions at such future time will be subject to the inland lakes and streams act, PA 1965, No 291, assigned CL 1948, § 281.731 *et seq.* (Stat Ann 1968 Cum Supp § 11.451 *et seq.*) and therefore the broad injunctive relief granted plaintiffs should be limited to those areas over which easement rights have been found to exist in this opinion.

In their third question, defendants ask whether the trial court committed error in determining that they were responsible for removing all fill dumped

and in ordering them to remove a portion of the fill dumped.

Regarding the area north of the connecting stream and east of 35th street, defendants' filling operations were on dry land and swamp land, areas generally above the ordinary high water mark. There was no testimony that the filling operations in this area either interfered with the reasonable use of the surface water of East lake by other riparian owners or "necessarily constitute[d] an interference with [plaintiffs'] rights of boating and fishing on the entire surface of [East] lake in its natural condition." *Burt* v. *Munger* (1946), 314 Mich 659, 664. The connecting stream remains navigable and therefore this Court fails to find interference in an unreasonable manner by defendants infringing on the rights of other riparian owners or the general public. Defendants have gratuitously bestowed a benefit on the general public in that their filling operations have improved this easement area, providing better access to East lake and the connecting stream than existed previously.

No testimony appears in the record stating or claiming that the fill on the east shore of Middle lake along 35th street where an easement had been established "necessarily constitute[d] an interference with [plaintiffs'] rights of boating and fishing on the entire surface of the lake in its natural condition." *Burt* v. *Munger, supra.* Plaintiffs' riparian rights must be *clearly shown* to have been invaded. Again, defendants' filling operations improved access to Middle lake and were a gratuity to the public. No proof appears in the record that fill washing out into the Middle lake will substantially affect the total surface area of the lake used for boating and fishing.

The situation in this case does not come foursquare within the ruling of *Burt* v. *Munger, supra,*

because therein the placement of a proposed wall on the lake bottom would have resulted in a diminution of the size of the lake. The testimony in the instant case falls short of clearly showing that defendants' filling operations have resulted in an actual diminution of the size of either lake involved. Defendants need not remove fill already placed in the public easement.

In their fourth and final question, defendants ask whether the trial court had authority to award costs for preparation time of expert witnesses.

This question was answered by this Court in *Gundersen* v. *Village of Bingham Farms* (1965), 1 Mich App 647. Therein it was held that a trial court has discretion in the matter of awarding costs to expert witnesses for preparation. CLS 1961, § 600.-2164 (Stat Ann 1962 Rev § 27A.2164).

Affirmed in part and reversed in part and remanded for a judgment to be entered in accord with this opinion limiting the public easement rights to those areas actually used by the general public and enjoining defendants only as to those specified areas. No costs, neither party prevailing in full.

MCGREGOR, P. J., and KAUFMAN, J., concurred.