*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JEFFREY PIGEON, GREG BERKLEY, BLANDIS
FAMILY LIVING TRUST, DEBORAH
BLACKMORE, FRED BLACKMORE, JR., JOHN
F. BURNISON, KEVIN CULKOWSKI, NANCY
CULKOWSKI, JONATHAN DOYLE, FRANK E.
DUNCAN, JOHN W. GARRETT, DEBORAH E.
GARRETT, JOHN MASON HIMICH, MELIA
HIMICH, TIMOTHY H. KOHLER, KAREN
KRAUS, WILLIAM H. KRAUS, CHARLES A.
KUMNICK, CHRISTINA KUMNICK, LINDA L.
MOORE LIVING TRUST, MARY J. MAWBY,
THOMAS E. MAWBY, DAWN I. MOORE,
GORDON L. MOORE, SANDRA S. MOORE,
WAYNE L. MOORE, ANTONI OLDAKOWSKI,
MARK OLDAKOWSKI, ROZALIA
OLDAKOWSKI, HARRY SABOURIN, SUSAN
SABOURIN, DOUGLAS RAY SEXTON, JR.,
GERALDINE SEXTON, DONALD J. SPARKS,
STEPHEN TRAMMELL, BROOKE WILBANKS,
and JACK J. WILHELM,

UNPUBLISHED
September 15, 2022

        Plaintiffs/Counterdefendants-
        Appellees,

and

RANDALL F. DIETER,

        Plaintiff/Counterdefendant,

v

ASHKAY ISLAND, LLC,

        Defendant/Counterplaintiff-Appellant.

No. 357761
Washtenaw Circuit Court
LC No. 18-000070-CZ

-1-

Before:  GLEICHER, C.J., and GADOLA and YATES, JJ.

PER CURIAM.

Defendant, Ashkay Island, LLC, appeals by right the trial court's order denying its motion for summary disposition and granting summary disposition to plaintiffs pursuant to MCR 2.116(C)(10) (no genuine issue of material fact).  We affirm.

## I.  FACTUAL BACKGROUND

This case arises out of a dispute involving property in and around Iron Mill Pond. Defendant owns Ashkay Island, an eight-acre island located in the pond.  Plaintiffs own upland property adjacent to Iron Mill Pond and contiguous to the underwater land that defendant owns. In January 2018, plaintiffs filed a nuisance complaint against defendant, alleging that defendant's use of Ashkay Island for short-term rental activity violated the Manchester Township Zoning Ordinance.  Defendant denied plaintiffs' claims and asserted that plaintiffs' properties did not border Iron Mill Pond, so plaintiffs did not have rights to the water.  Defendant also counterclaimed, requesting that the trial court enter a decree that defendant owned the land at issue around Iron Mill Pond, "free and clear of any right, title, claim, or interest" of plaintiffs.  Further, defendant requested that the trial court enjoin plaintiffs from entering defendant's property and that plaintiffs remove their personal property from defendant's property.

In October 2018, plaintiffs moved for partial summary disposition regarding their nuisance allegations, requesting that the trial court enjoin defendant from engaging in rental activity on Ashkay Island.  Defendant likewise moved for partial summary disposition on its counterclaim. In September 2019, the trial court denied plaintiffs' motion for summary disposition and dismissed plaintiffs' nuisance complaint.  Plaintiffs appealed, and a panel of this Court held that defendant was violating the zoning ordinance by operating a tourist home, and that plaintiffs were entitled to summary disposition on the basis of their nuisance per se claim.[1]

In March 2020, defendant filed an amended motion for summary disposition regarding the water issues.  Plaintiffs also moved for summary disposition, arguing that the owners of properties adjacent to the pond had riparian rights.  The trial court found that it had jurisdiction to address and resolve disputes between the property owners and that the shoreline owners had established that, pursuant to the Marketable Record Title Act (MRTA), MCL 565.101 *et seq.*, their titles ran "at least to the water's edge."  Next, the trial court found that Iron Mill Pond was part of a natural watercourse, and the adjacent owners had riparian rights to the use and enjoyment of the waters. The trial court further explained that it did not need to address plaintiffs' arguments regarding adverse possession, prescriptive easement, or laches, and it entered summary disposition in favor of plaintiffs regarding defendant's counterclaim.

---

[1] *Pigeon v Ashkay Island, LLC*, unpublished per curiam opinion of the Court of Appeals, issued January 28, 2021 (Docket No. 351235).

The trial court also denied defendant's motion for reconsideration. Following this Court's previous opinion regarding the nuisance issue, the trial court entered an order closing the case. This appeal followed.

## II. ANALYSIS

Defendant argues first that the trial court erred by finding that plaintiffs established that their properties ran to the water's edge of Iron Mill Pond. We disagree.

This Court reviews de novo a trial court's decision whether to grant a motion for summary disposition pursuant to MCR 2.116(C)(10). *Glasker-Davis v Auvenshine*, 333 Mich App 222, 229; 964 NW2d 809 (2020). "A motion for summary disposition under MCR 2.116(C)(10) challenges the factual sufficiency of the complaint, with the trial court considering the entire record in a light most favorable to the nonmoving party." *LaFontaine Saline, Inc v Chrysler Group, LLC*, 496 Mich 26, 34; 852 NW2d 78 (2014). If the moving party properly asserts and supports the motion for summary disposition, the "burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists." *Quinto v Cross and Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). This Court's review is limited to the evidence that had been presented to the trial court when the trial court decided the motion. *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 475-476; 776 NW2d 398 (2009). "Courts are liberal in finding a factual dispute sufficient to withstand summary disposition." *Id.* at 476. This Court also reviews for clear error a trial court's findings of fact. *Christiansen v Gerrish Twp*, 239 Mich App 380, 387; 608 NW2d 83 (2000). A trial court's finding is clearly erroneous when, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made. *Id.*

## A. RIPARIAN RIGHTS

"The basis of the riparian doctrine, and an indispensable requisite to it, is actual contact of the land with the water." *Peterman v State Dep't of Natural Resources*, 446 Mich 177, 192 n 19; 521 NW2d 499 (1994). Further, "[a] meander line does not constitute a boundary line[,]" but is, instead, "an artificial line that describes the 'meandering' course of a body of water (typically a river or stream, but also a lake's shoreline), and it indicates that the boundary is the water's edge." *Port Sheldon Beach Ass'n v Dep't of Environmental Quality*, 318 Mich App 300, 308; 896 NW2d 496 (2016). See also *Palmer v Dodd*, 64 Mich 474, 475; 31 NW 209 (1887). When a surveyor does not use a meander line, the boundary is fixed and constant. See *Port Sheldon Beach Ass'n*, 318 Mich App at 308. As the Michigan Supreme Court has explained:

> "The rule, *everywhere admitted*, that where the land encroaches upon the water by gradual and imperceptible degrees, the accretion or alluvion belongs to the owner of the land, is equally applicable to lands bounding on tide waters or on fresh waters, and to the King or the State as to private persons; and *is independent of the law governing the title in the soil covered by the water*." [*Hilt v Weber*, 252 Mich 198, 219; 233 NW 159 (1930), quoting *Shively v Bowlby*, 152 US 1, 35; 14 S Ct 548; 38 L Ed 331 (1894).]

Defendant argues that the trial court erred by finding that Iron Mill Pond is a natural watercourse and that adjacent owners have riparian rights. We disagree.

"Unless the contrary appears, a grant of land bounded by a water course conveys riparian rights." *Grand Rapids Ice & Coal Co v South Grand Rapids Ice & Coal Co*, 102 Mich 227, 236; 60 NW 681 (1894). "Land which includes or is bounded by a natural watercourse is defined as riparian." *Thies v Howland*, 424 Mich 282, 287-288; 380 NW2d 463 (1985). "Strictly speaking, land which includes or abuts a river is defined as riparian, while land which includes or abuts a lake is defined as littoral," but " 'riparian' is often used to describe both types of land . . . ." *Id*. at 288 n 2. A person's "exercise of riparian rights must be reasonable and cannot interfere with the rights of other riparian owners or the public." *Id*. at 288 n 3. Moreover, "nonriparian owners and members of the public who gain access to a navigable waterbody have a right to use the surface of the water in a reasonable manner . . . ." *Id*. at 288.

"[A] 'riparian owner' is one whose land is bounded by a river and 'riparian rights' are special rights to make use of water in a waterway adjoining the owner's property." *Little v Kin*, 249 Mich App 502, 504 n 2; 644 NW2d 375 (2002), quoting 78 Am Jur 2d, Waters, § 30. As will be seen, plaintiffs established that their properties ran to the water's edge. Further, as plaintiffs correctly argue, the fact that the original survey did not utilize the water as a boundary does not mean that it *cannot* be a boundary. See *Railroad Co v Schurmeir*, 74 US 272, 272; 19 L Ed 74 (1868). These parcels have indisputably been conveyed at various times and to various people since the original patent and conveyance. For a period of at least 40 years plaintiffs have established ownership to the water's edge. See MCL 565.106. Because land bounded by a natural watercourse is riparian, see *Thies*, 424 Mich at 287-288, the trial court did not clearly err by finding that plaintiffs had riparian rights. See *Christiansen*, 239 Mich App at 387. See also *Thompson v Enz*, 379 Mich 667, 677; 154 NW2d 473 (1967).

## B. THE MRTA AND FEDERAL PREEMPTION

"The primary goal of statutory interpretation is to identify and give effect to the intent of the Legislature." *Port Sheldon Beach Ass'n*, 318 Mich App at 308. Under section 1 of the MRTA, MCL 565.101, a person who has an unbroken chain of title of record to any interest in land for 40 years has a marketable record title to that interest. Further, MCL 565.106 provides as follows:

> This act shall be construed to effect the legislative purpose of simplifying and facilitating land title transactions by allowing persons dealing with the record title owner, as defined in this act, to rely on the record title covering a period of not more than 20 years for mineral interests and 40 years for other interests prior to the date of such dealing and to that end to extinguish all claims that affect or may affect the interest dealt with, the existence of which claims arises out of or depends upon any act, transaction, event, or omission antedating the 20-year period for mineral interests and the 40-year period for other interests, unless within the 20-year period for mineral interests or the 40-year period for other interests a notice of claim as provided in section 3 has been filed for record. The claims extinguished by this act are any and all interests of any nature whatever, however denominated, and whether the claims are asserted by a person sui juris or under disability, whether the person

is within or outside the state, and whether the person is natural or corporate, or private or governmental.

In this case, defendant argues that "[f]ew proofs were submitted in regard to the location of the water's edge of Iron Mill Pond on the exact date of the conveyance" that would establish where the plaintiffs' property lines were. Defendant submitted an affidavit by John K. Piatt, a licensed professional surveyor with Piatt Land Surveying, LLC, with its amended motion for summary disposition. Piatt explained that there were no meander lines in the original government survey that was dated July 1, 1824. Piatt stated that "the only boundary lines of the original government survey were section lines which were established and used solely for the issuance of United States government patents."

However, plaintiffs submitted an affidavit by Erin Snyder, a Senior Title Examiner with Absolute Title, Inc., in support of their motion for partial summary disposition regarding defendant's counterclaim. In summary of her findings, Snyder explained:

> a. Two of the original Shoreline Deeds out from common ownership specified metes and bounds descriptions which appear to generally follow the shoreline, while two specify legal descriptions which specifically reference along the shoreline.

> b. All of the Shoreline Deeds out from common ownership state a similar version of the same restriction—that the parcels are "subject to the full and free use and enjoyment of the water power of the pond or lake…, to the right of raising by a dam or dams or otherwise the water in the said lake to its full and highest level…, and the said water power, and all its appurtenances, is served to the grantors named in this conveyance and to their heirs and assigns." These rights were retained in favor of the owner of the Island/Water property.

> c. The current legal descriptions for the shoreline properties all include footage either to the shore line or the high water mark, and have for a period of at least 67 years.

> d. No restrictions to the shoreline owners' riparian rights, other than those already stated with respect to water level and water power, were found.

Plaintiffs also provided records regarding the deeds and surveys, which provided chains of title dating back to the common owner of all the parcels at issue. Defendant for its part offered nothing to counter the assertions in the Snyder affidavit.

The trial court properly relied on the MRTA in addressing this dispute, despite defendant's arguments that the Supremacy Clause of the US Constitution, US Const, art VI, cl 2, renders it inapplicable. As the United States Supreme Court has explained:

> Under the Supremacy Clause, US Const, Art VI, cl 2, state laws that interfere with, or are contrary to the laws of congress, made in pursuance of the constitution, are invalid. The ways in which federal law may pre-empt state law are well established and in the first instance turn on congressional intent. Congress'

-5-

intent to supplant state authority in a particular field may be expressed in the terms of the statute. Absent explicit pre-emptive language, Congress' intent to supersede state law in a given area may nonetheless be implicit if a scheme of federal regulation is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it, if the Act of Congress . . . touches a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject, or if the goals sought to be obtained and the obligations imposed reveal a purpose to preclude state authority. [*Wis Pub Intervenor v Mortier*, 501 US 597, 604-605; 111 S Ct 2476; 115 L Ed 2d 532 (1991) (quotation marks and citations omitted).]

Defendant has not identified language in any statute that establishes the Congress's intent to preempt state law in this situation. Plaintiffs also point out that in support of its Supremacy Clause argument, defendant relied on a chapter of the United States Code entitled "Survey of Public Lands," even though this situation involves a property dispute between private parties. Defendant argues that "the Property Clause and all subsequently enacted statutes specifically providing the methods for the sale and disposal of federal land clearly and expressly preempt the application of state law to create, eliminate or modify federally created boundaries." But defendant has not established how the trial court did not have the authority to resolve property disputes between private individuals when the original grant of federal land on which defendant relies was long ago separated and conveyed to different individuals, with the result being legal descriptions that specifically refer to Iron Mill Pond as the boundary. Nor has defendant relied on any specific language in federal law prohibiting state courts from resolving such disputes with reference to state law. In fact, this Court has previously applied state riparian law in cases related to property disputes involving land originally platted and granted by the federal government. See *Gregory v LaFaive*, 172 Mich App 354, 361-362; 431 NW2d 511 (1988).

None of the statutory sections defendant relies upon most heavily, 43 USC 751 through 43 USC 753, express an intent to preempt state laws concerning riparian rights. What the cited sections make clear is that the congressional purpose was to create a grid system to facilitate the transfer of federal lands to states and private parties, leaving issues related to subsequent conveyances and property rights to state law. As stated in 1 Cameron, Michigan Real Property Law (3d ed), § 3.2, p 87:

Unless there are reservations or exceptions in the pertinent grant from the federal government, the laws of the state determine the extent and nature of the ownership of riparian proprietors. As stated in *Packer v Bird*, 137 US 661, 669 (1891), "whatever incidents or rights attach to the ownership of property conveyed by the government will be determined by the States" in which the streams are situated.

See also *Hardin v Jordan* 140 US 371, 380; 11 S Ct 808; 35 L Ed 428 (1891)

Furthermore, the 2009 Manual of Surveying Instructions that defendant cites, published by the federal Bureau of Land Management as a guide for government surveyors, states as follows in Section 8-57(5): "After Federal land has been granted or conveyed, State law is used to determine the ownership of the beds, and banks and shores of waterways unless there is a residual overriding

Federal interest." Defendant has failed to identify any "overriding Federal interest" that would preempt the application of state law in this case.

Therefore, federal law does not preempt the MRTA, which applies to the resolution of this matter. In *Fowler v Doan*, 261 Mich App 595, 600; 683 NW2d 682 (2004), this Court explained that the MRTA "serves to bar competing claims of title of which plaintiffs had no notice." There has been no claim that plaintiffs were previously on notice of a competing claim to title. Further, in *Fowler*, this Court rejected the defendant's argument that the MRTA was being illegally and unjustly used to "steal away title from one whose title originated in patent," and stated that the argument had no support in law. *Id*. at 602 (quotation marks omitted). Likewise, in *Henson v Gerlofs*, 13 Mich App 435, 441; 164 NW2d 533 (1968), this Court addressed a situation in which the parties had competing chains of title, one of which was based on a patent while the other was based on "various deeds." This Court explained that the application of the "40-year title statute" would decide the issue. *Id*. Further, this Court explained that "the fundamental purpose of the statute was to erase all ancient mistakes and errors so that if a party enjoyed a record title for forty years, it would be acceptable," and "practically every financial institution in Michigan has followed and relied upon this law." *Id*.

### III. CONCLUSION

When plaintiffs provided evidence that their titles extended to the water's edge, the trial court properly found that defendant did not rebut the evidence or establish that a genuine issue of disputed fact existed regarding the boundaries of plaintiffs' property. See *Quinto*, 451 Mich at 362. Defendant asserts that limited evidence was admitted regarding the location of the water's edge "on the exact date of the conveyance," but plaintiffs provided evidence regarding the ownership of their property that defendant has not rebutted. Although defendant now argues that the boundary was fixed at the date of the conveyance from the federal government, defendant argued in the lower court that the boundaries between plaintiffs' and defendant's parcels were determined by a 1966 court order that regulated the water elevation of Iron Mill Pond. Plaintiffs on the other hand have consistently established that for a period beyond 40 years, the legal descriptions of their properties extended to the water's edge. See MCL 565.106. Therefore, the trial court did not clearly err by finding that plaintiffs' properties ran at least to the water's edge, see *Christiansen*, 239 Mich App at 387, and that they consequently have riparian rights. The trial court properly granted summary disposition in favor of plaintiffs.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Michael F. Gadola
/s/ Christopher P. Yates

-7-